**Eddie ADAMS et al.,
Plaintiffs-Appellants,**

v.

**Norman CARLSON et al.,
Defendants-Appellees.**

No. 74–1495.

United States Court of Appeals,
Seventh Circuit.

Argued Feb. 21, 1975.

Decided July 29, 1975.

G. Flint Taylor, Jr., Lee H. Tockman, Michael E. Deutsch, National Lawyers Guild, Chicago, Ill., Arpiar G. Saunders, Jr., National Prison Project, Washington, D. C., for plaintiffs-appellants.

William J. McNally, Frank S. Merritt, Prison Legal Service Project, Chicago, Ill., for amicus.

Henry A. Schwarz, U. S. Atty., Frederick J. Hess, Asst. U. S. Atty., East St. Louis, Ill., for defendants-appellees.

Before CUMMINGS, PELL and TONE, Circuit Judges.

PELL, Circuit Judge.

The plaintiffs, prisoners at Marion Federal Penitentiary, appeal from that part of a district court order denying their motion for an award of attorneys' fees and witness expenses. These fees and expenses were incurred by the plaintiffs' attorneys in connection with the plaintiffs' successful litigation challenging certain practices and procedures followed at the penitentiary. The defendants were the Director of the Federal Bureau of Prisons and officials of the federal penitentiary during the pertinent period.

I. Attorneys' Fees.

It is well established that, under 28 U.S.C. § 2412,[1] absent specific statutory authority, attorneys' fees cannot be awarded against the United States. *Alyeska Pipeline Service Co. v. Wilderness Society*, 421 U.S. 240, 269 n. 44, 95 S.Ct. 1612, 1627 n. 44, 44 L.Ed.2d 141 (1975); *Pyramid Lake Paiute Tribe of*

---

1. 28 U.S.C. § 2412 provides, in pertinent part:

"Except as otherwise specifically provided by statute, a judgment for costs, as enumerated in section 1920 of this title but not including the fees and expenses of attorneys may be awarded to the prevailing party in any civil action brought by or against the United States or any agency or official of the United States acting in his official capacity, in any court having jurisdiction of such action. . . . ."

*Indians v. Morton,* 163 U.S.App.D.C. 90, 499 F.2d 1095, 1096 (1974); *Natural Resources Defense Council, Inc. v. Environmental Protection Agency,* 484 F.2d 1331, 1335 (1st Cir. 1973); *Cassata v. Federal Savings & Loan Ins. Corp.,* 445 F.2d 122, 125–6 (7th Cir. 1971). As the district court noted, the defendants here "were clearly officials of the United States acting in their official capacities during the events which gave rise to this litigation." The plaintiffs, moreover, admit that since they brought their suit under the Constitution, there is no applicable statute which directly authorizes the award against the United States. § 2412 would, therefore, appear to bar an award of attorneys' fees against the defendants in this case.

■ The plaintiffs argue, however, that although there is no statutory authorization for an award of attorneys' fees, such fees should nonetheless be awarded to them under the private attorney general theory. This contention must fail, even in the absence of § 2412, in light of the Supreme Court's recent decision in *Alyeska Pipeline, supra.*

In this appeal, the plaintiffs, in support of an award based on the private attorney general theory, argue that the claim is strengthened by bad faith obstinacy displayed by the defendants during the course of this litigation. There is no mention of this basis of fortification of the claim in the district court opinion. See 375 F.Supp. at 1242. For the reasons indicated hereinbefore we have rejected the private attorney general rationale. We are not unmindful, however, that "a federal court may award counsel fees to a successful party when his opponent has acted 'in bad faith, vexatiously, wantonly, or for oppressive reasons.' [Citations omitted.] In this class of cases, the underlying rationale of 'fee shifting' is, of course, punitive, and the essential element in triggering the award of fees is therefore the existence of 'bad faith' on the part of the unsuccessful litigant." *Hall v. Cole,* 412 U.S. 1, 5, 93 S.Ct. 1943, 1946, 36 L.Ed.2d 702 (1973).

■ The contention of bad faith was apparently not advanced in the district court where it should have been if it was believed to be a basis, either directly or indirectly, for the award of fees, since the district court judge was better able than we to evaluate the merits of such a claim. It has not been advanced directly, as a matter of fact, in this court. Nevertheless since reference was made in the plaintiffs' briefs to claimed bad faith, we have examined the record to see if it might support a bad faith basis for the allowance of attorney fees.

■ The standards for bad faith are necessarily stringent. *Satoskar v. Indiana Real Estate Commission,* 517 F.2d 696, at 697–698 (7th Cir. 1975). We agree with the language of Judge Sprecher in *Townsend v. Edelman,* 518 F.2d 116 at 123–124 (7th Cir. 1975), "[w]e have examined the record in this case and we cannot say that the decision to defend [the procedures that had been involved], or the manner in which defendants handled this litigation has been in bad faith such as to justify an award of attorneys' fees."

■ It is true that the defendants litigated vigorously. The area of litigation, however, is one of expanding and developing concepts. Vigorous litigation in an area in which the law is so unsettled should not be equated with obduracy, wantonness, vexatiousness, or oppression. Here, the district court, subsequent to the remand, carefully considered the contentions of the plaintiffs, some of which the court sustained and some of which it rejected. Our reading of the record is not inconsistent with a finding that the defendants as public servants were engaged in good faith litigation to the end of hammering out the extent to which constitutional rights were to be accorded to prisoners. That some of their contentions were not upheld is no basis for the entry of an award on a punitive basis.

■ We also find unpersuasive the contention that § 2412 should not apply in the present case because the Justice Department was not "available" to aid

the plaintiffs in their suit against the federal prison officials. A similar argument was recently rejected by the District of Columbia Circuit in *Pyramid Lake, supra.* We agree with that court that there is no indication that Congress intended, by providing for a possible intervention on behalf of a plaintiff by a department of the federal Government, to waive its sovereign immunity with respect to attorneys' fees when such possible intervention is "unavailable." It is fundamental that "Congress alone has power to waive or qualify immunity," *United States v. Chemical Foundation, Inc.,* 272 U.S. 1, 20, 47 S.Ct. 1, 8, 71 L.Ed. 131 (1926), and "limitations and conditions upon which the Government consents to be sued must be strictly observed and exceptions thereto are not to be implied." *Soriano v. United States,* 352 U.S. 270, 276, 77 S.Ct. 269, 273, 1 L.Ed.2d 306 (1957).

■ The plaintiffs argue, alternatively, that if § 2412 applies to them, it violates the Fifth Amendment. The statute, they contend, creates two classes of litigants who sue to protect their civil rights: (1) those suing under the Constitution or a statute which does not authorize the award of attorneys' fees; and (2) those suing under a statute which does authorize the award of attorneys' fees.[2] The plaintiffs argue that this classification is arbitrary and irrational and thereby violates the equal protection component of the Fifth Amendment.[3] We disagree.

Prior to 1966, § 2412 provided that the United States would be liable for fees and costs "only when such liability is expressly provided for by Act of Con-

gress." In 1966, the statute was amended to its present version. In amending § 2412, Congress authorized a more liberal grant of costs against the Government. As this court noted in *Cassata, supra,* Congress specifically excluded attorneys' fees from this liberalization. 445 F.2d at 125. "Examination of the legislative history of the present section reveals, as the statute itself indicates, that the congressional failure to alter the general rule governing the award of attorneys' fees was hardly an oversight." *Pyramid Lake, supra* at 1096. Rather, it is clear that Congress intended to limit recovery of attorneys' fees from the United States to those areas in which there was specific statutory authorization. In his letter submitting the draft bill to the Senate, the Attorney General noted that the bill "makes it clear that the fees and expenses of attorneys . . . may not be taxed against the United States." 2 U.S.Code Cong. & Admin. News, p. 2531 (1966). The Senate Judiciary Committee similarly observed that the "costs referred to in the section do not include fees and expenses of attorneys." 2 U.S.Code Cong. & Admin. News, p. 2529 (1966).

Legislative reform "may take one step at a time, addressing itself to the phase of the problem which seems most acute to the legislative mind. . . . The legislature may select one phase of one field and apply a remedy there, neglecting the others." *Williamson v. Lee Optical Co.,* 348 U.S. 483, 489, 75 S.Ct. 461, 465, 99 L.Ed. 563 (1955). In the present case, Congress obviously intends to consider carefully and area-by-area the question of whether attorneys' fees should be taxable against the United

---

**2.** An example of the second category is found in *Hariston v. R & R Apartments,* 510 F.2d 1090 (7th Cir. 1975).

**3.** The plaintiffs also contend that they are treated unfairly when compared with state prisoners. State prisoners' actions under § 1983 are, however, subject to the Supreme Court's ruling in *Alyeska Pipeline, supra.* See 421 U.S. at 264, 95 S.Ct. 1612 at 1625 (with which compare n. 39 and n. 44); *Satoskar v. Indiana Real Estate Commission, supra.* We need not reach the question of whether, in

a case in which *Alyeska* would permit an award of fees against state officers but § 2412 would preclude them if a similar claim was asserted against federal officers, equal protection would be denied, this not being such a case. *Cf.* also this statement in *Alyeska* (at 263, 95 S.Ct. at 1625):

"Congress itself presumably has the power and judgment to pick and choose among its statutes and to allow attorneys' fees under some but not others."

States. In the future Congress may well statutorily authorize such awards where the litigant brings suit under the Constitution. We cannot say that the fact that Congress has not yet done so rises to the level of invidious discrimination.

The district court's denial of attorneys' fees is affirmed.

## II. Witness Fees.

 Along with the denial of attorneys' fees, the district court, without any statement of reasons, also denied the plaintiffs' motion for recovery of expert witnesses expenses. The lower court denied the witness expenses in the same section of its order which dealt with attorneys' fees and, apparently, concluded that both types of recovery were barred by § 2412.

Section 2412, however, specifically provides that costs, as enumerated in 28 U.S.C. § 1920, may be awarded to the prevailing party. Section 1920, in turn, provides, *inter alia,* for the recovery of "fees and disbursements for printing *and witnesses.*" (Emphasis added.) That portion of the district court order denying witness expenses is therefore, reversed.

The amount which the plaintiffs may recover for witness expenses is determined by 28 U.S.C. § 1821. That section basically provides a statutory allowance for travel and subsistence. Where, as here, the witnesses involved are expert witnesses, the prevailing party can recover only the statutory amounts prescribed in § 1821 and not additional expert witness fees. *Henkel v. Chicago, St. Paul, Minneapolis & Omaha Ry. Co.,* 284 U.S. 444, 446, 52 S.Ct. 223, 76 L.Ed. 386 (1932); *Baum v. United States,* 432 F.2d 85, 86 (5th Cir. 1970); *Green v. American Tobacco Co.,* 304 F.2d 70, 77 (5th Cir. 1962). "This rule applies with equal force where the United States is a party." *Baum, supra* at 86.

We cannot determine, from the affidavit submitted by the plaintiffs to the district court, what portion of the amounts sought as witness expenses are those prescribed by § 1821. The matter is remanded to the district court for such a determination.

Affirmed in part; reversed and remanded in part.