## In re NATIONAL STUDENT MARKETING LITIGATION.

### MDL Docket No. 105.

### C.A. Nos. 2405–72, 2406–72, 2407–72.

United States District Court, District of Columbia.

June 15, 1978.

Amended July 26, 1978.

See also, D.C., 445 F.Supp. 157.

Frank J. Delany, Washington, D. C., for Louis W. Biegler and the Biegler Foundation.

William E. Haudek, Julius Levy, Stephen P. Hoffman, New York City, for plaintiffs and Pomerantz, Levy, Haudek & Block.

James E. Tolan, John Logan O'Donnell, Bruce E. Pindyck, New York City, for Olwine, Connelly, Chase, O'Donnell & Weyher and National Student Marketing Corp.

## MEMORANDUM

BARRINGTON D. PARKER, District Judge:

In an Opinion and Order dated January 9, 1978, the Court granted summary judgment in favor of counterdefendants, the class plaintiffs in the above-captioned actions, Pomerantz, Levy, Haudek & Block (Pomerantz Levy), and Olwine, Connelly, Chase, O'Donnell & Weyher (Olwine Connelly), on a counterclaim filed by Louis W. Biegler and the Biegler Foundation (the Bieglers). Pomerantz Levy and Olwine Connelly have separately moved for the assessment of liti-

gation costs, including attorneys' fees,[1] which they incurred in connection with their respective defenses to the counterclaim.[2] Although cognizant that the assessment of attorneys' fees is traditionally reserved for the most extraordinary cases, the Court has concluded that the conduct of the Bieglers during these proceedings justifies such an award.

## I.

▆▆ Under longstanding American practice, the assessment of attorneys' fees against an unsuccessful party to a lawsuit is generally prohibited, subject only to a few exceptions of discrete and limited scope. *See Alyeska Pipeline Serv. Co. v. Wilderness Society*, 421 U.S. 240, 257–60, 95 S.Ct. 1612, 44 L.Ed.2d 141 (1975). One such exception, drawn from the inherent power of the courts, *Bond v. Stanton*, 528 F.2d 688, 690 (7th Cir. 1976), allows the assessment of fees against a losing party who has "acted in bad faith, vexatiously, wantonly, or for oppressive reasons . . . ." *F. D. Rich Co., Inc. v. United States*, 417 U.S. 116, 129, 94 S.Ct. 2157, 2165, 40 L.Ed.2d 703 (1974); *Hall v. Cole*, 412 U.S. 1, 5, 93 S.Ct. 1943, 36 L.Ed.2d 702 (1973); *see* Annot., 31 A.L.R. Fed. 833 (1974). This exception, which also encompasses obstinacy, obduracy and dilatoriness, *Straub v. Vaisman & Co., Inc.*, 540 F.2d 591, 598–600 (3d Cir. 1976), and which extends to conduct in initiating or prosecut-

ing the litigation, *Hall v. Cole, supra; Straub v. Vaisman & Co., Inc., supra*; 6 J. Moore, *Federal Practice* ¶ 54.77[2] at 1709–11 (2d ed. 1976), has been applied in the context of a securities fraud case, *e. g., Straub v. Vaisman & Co., Inc., supra; Gerstle v. Gamble-Skogmo, Inc.*, 478 F.2d 1281, 1309 (2d Cir. 1973); *Kahan v. Rosenstiel*, 424 F.2d 161 (3d Cir.), *cert. denied*, 398 U.S. 950, 90 S.Ct. 1870, 26 L.Ed.2d 290 (1970); *see also Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 210 n. 30, 96 S.Ct. 1375, 47 L.Ed.2d 668 (1976).[3]

▆▆ According to Pomerantz Levy and Olwine Connelly, the conduct of the Bieglers in filing and prosecuting their counterclaim in this securities fraud case falls within the parameters of this "bad faith" exception. The standard by which their allegations of bad faith must be judged is "necessarily stringent," *Adams v. Carlson*, 521 F.2d 168, 170 (7th Cir. 1975), requiring more than vigorous conduct of litigation in an unsettled area of the law, *id.* Nevertheless, the standard does not require that the legal and factual bases for the action prove totally frivolous; where a litigant is substantially motivated by vindictiveness, obduracy or *mala fides,* the assertion of a colorable claim will not bar the assessment of attorneys' fees against him. *See Wright v. Jackson*, 522 F.2d 955, 958 (4th Cir. 1975); *Gerstle v. Gamble-Skogmo, Inc., supra*, at 1309 n. 33.[4] However, in considering an

---

1. Hereinafter, such costs will be referred to generically as "attorneys' fees".

2. Pomerantz Levy and the class plaintiffs have moved jointly for an award of litigation costs and the fees of counsel representing both, namely Pomerantz Levy; therefore, the Court will hereinafter refer to these parties jointly as Pomerantz Levy. Olwine Connelly also has moved, on behalf of its client NSMC, for the assessment of "all expenses incurred by NSMC in defending against the Bieglers' attempt to set aside the judgment approving the settlement." *See* note 16 *infra.*

3. The applicability of this exception within the circumstances of any specific case rests largely within the Court's discretion. *See In re Boston & Providence R. R. Co.*, 501 F.2d 545, 549–50 (1st Cir. 1974). The grant of attorneys' fees under this exception serves two purposes: first, punitive, through punishment of abuse of

the judicial process; and second, compensatory, through recovery by an injured party of expenses incurred due to the other party's harassing and vexatious litigation tactics. *Hall v. Cole*, 412 U.S. 1, 5, 95 S.Ct. 1381, 43 L.Ed.2d 682 (1973); *Kahan v. Rosenstiel*, 424 F.2d 161, 167 (3d Cir.), *cert. denied*, 398 U.S. 950, 90 S.Ct. 1870, 26 L.Ed.2d 290 (1970). Despite the punitive aspect of the exception, the amount of assessable fees may not exceed the amount actually incurred by the opposing party. *See Wright v. Jackson*, 522 F.2d 955, 958 (4th Cir. 1975).

4. Without citation of authority to the contrary, the Bieglers have rested their opposition to the award of attorneys' fees almost totally on the purportedly "nonfrivolous" nature of their claim, arguing that "[t]o conclude that they acted in good faith, of course, does not necessarily require the Court to agree that its opin-

award of attorneys' fees in such circumstances, the Court must act with circumspection, lest other litigants be deterred from properly prosecuting colorable claims.

## II.

The background of this litigation is described in the Opinion of January 9, 1978, and need not be reviewed here. Three aspects, however, should be emphasized: (1) the Bieglers made no objection, legal or otherwise, to the 1974 NSMC/Interstate settlement until after they were named as party defendants in March 1975, (2) the Bieglers have rested their case upon charges of professional misconduct and fraud on the part of counsel in this case, charges which can destroy professional reputations whether or not proven; and most importantly, (3) this matter is one part of a large multidistrict litigation which is highly sensitive to any delay.

## A.

In this context, the motivation of the Bieglers in initiating their counterclaim is suspect. Although initially in apparent agreement with the terms of the 1974 settlement, the Bieglers followed their inclusion as defendants in the class actions with charges of fraud and collusion against Pomerantz Levy and Olwine Connelly in connection with that same settlement.[5] These

charges of fraud and collusion were unsupported by a colorable legal argument or by "one piece of credible evidence," Opinion of January 9, 1978, at 12. The continued assertion of such charges in the absence of any support further suggests the presence of vindictiveness or a reckless disregard for the professional reputations of Pomerantz Levy and Olwine Connelly.[6]

Thus, the initiation of this action strongly suggests bad faith on the part of the Bieglers and alone may justify assessment of attorneys' fees.[7] To the extent that the record may be equivocal on this point, however, any doubt concerning their bad faith is removed when their conduct during litigation is considered.

## B.

As noted above, the counterclaim is related to a massive multidistrict litigation proceeding which has been pending for six years and has generated an extensive record of exhibits and hearing transcripts. After their inclusion as defendants in the class actions, the Bieglers had a substantial motivation to delay final conclusion of this proceeding and possible entry of judgment against them. The charges which they brought, if proven, would have required the dismissal of lead counsel on both sides and the appointment of new class counsel, re-

---

ion embodies error. The Court need only conclude that the Bieglers' beliefs as to applicable law and fact supplied them a reasonable basis for the good faith filing of the counterclaim." Bieglers' Memorandum, at 1–2. As a matter of law, this argument is incorrect; even assuming good faith in the filing of the counterclaim, other dilatory tactics during the litigation would justify the award of attorneys' fees.

**5.** Standing alone, the timing of the filing of the counterclaim would not demonstrate bad faith. In this case, however, the coincidence of the inclusion of the Bieglers as defendants and the filing of the counterclaim against the law firm and plaintiffs which had named them as defendants cannot be ignored when considered in light of the Bieglers' subsequent conduct.

**6.** Also, the secretive attempt by the Bieglers' counsel Frank J. Delany to initiate SEC disciplinary proceedings against Pomerantz Levy, discussed *infra* note 8, further reinforces this con-

clusion. The SEC General Counsel, Harvey L. Pitt, found that the Bieglers had not submitted "probative evidence of any wrongdoing." Mr. Pitt also indicated the impropriety of SEC investigation of issues arising in private litigation pending in federal court. Letter of Harvey L. Pitt to Frank Delany, March 31, 1977. Nevertheless, Mr. Delany continued to press for SEC disciplinary action.

**7.** Although the Bieglers have filed a response to the Olwine Connelly and Pomerantz Levy motions, they have failed effectively to address the issue of bad faith, *see* note 4 *supra*, except with regard to two incidents concerning submissions of evidentiary material, *see* note 13 *infra*. Rather, they have reargued the merits of the summary judgment order, in effect filing an appellate brief in this court. The Bieglers' failure to respond fully in this instance is typical of their conduct throughout the proceeding.

sulting in a substantial delay.[7a] That the Bieglers were particularly interested in the dismissal of class counsel is demonstrated by their motion of March 9, 1977, seeking to disqualify Pomerantz Levy and by secretive, *ex parte* communications with the Securities and Exchange Commission in which the Bieglers pressed for the commencement of disciplinary proceedings against Pomerantz Levy and Olwine Connelly.[8]

Clearly, this concerted effort to disqualify the lead counsel firms betrays an intent to delay the litigation and final adjudication of the class claims against the Bieglers. This strong inference is confirmed by the dilatory tactics employed by the Bieglers' counsel during discovery and various hearings before the Court. For example, in June 1977, the Bieglers propounded lengthy interrogatories which duplicated the substance of then-scheduled oral depositions and document production.[9]

Further, the Bieglers first indicated an intent to use the 1972 implementation of a "management incentive compensation plan" as proof of fraud and collusion in May 1977[10] and employed this new theory to justify further discovery. The Court reluc-tantly allowed such discovery on a shortened schedule expressly limited as to subject matter. Despite these limitations, the Bieglers conducted what amounted to a "fishing expedition" in violation of the Court's order.[11] Additionally, after this discovery, the Bieglers failed to present any credible evidence supporting this theory and, in fact, the counterdefendants demonstrated that in 1972 Louis Biegler had claimed credit for initiating this plan which he then saw as a means to save NSMC from excessive securities claims. Despite this demonstration, the Bieglers continued to assert the compensation plan as a basis for recovery.

The Bieglers' counsel also consistently failed to meet scheduled filing dates. During the first seven months of 1977, he requested extensions on seven occasions, which, if granted in full, would have extended these proceedings by eight months. On three occasions during this period, the Bieglers did not even apprise the Court that they would not meet the scheduled filing date and did not move for an extension of time until the respective document was overdue.[12]

---

**7a.** This is not to say that valid charges should not be brought simply because the subjects of the charges are counsel in complex litigation; rather, the seriousness of the charges, in this case involving the very integrity of the judicial process, causes substantial delay even if ultimately proved entirely meritless. Thus, when such charges do prove completely lacking in substance, the Court must consider delay as a possible motivating factor in bringing the claims.

**8.** This correspondence, referred to *supra* note 6, was initiated by the Bieglers' counsel after the Bieglers were named as defendants in the class actions. In his initial letter, Delany repeated every charge included in the original counterclaim. Also in that letter, he requested that the SEC "[p]lease keep this complaint confidential. I have given no hint to Mr. Levy [Julius Levy, a senior partner in Pomerantz Levy], or any person sharing his responsibility, that complaint would be made to the SEC." He then disclaimed any inference that his attempt to initiate SEC disciplinary action was intended to influence Mr. Levy. Included in this letter were general, unsupported charges of improprieties by Olwine Connelly, although the letter expressly seeks commencement of disciplinary proceedings only against Pomerantz Levy. This correspondence surfaced when copies were included by the SEC in discovery materials requested by Mr. Delany.

**9.** *See* Order of June 21, 1977, striking these interrogatories.

**10.** Delany Affidavit No. 5, at 6–10. At that time, he sought leave to proceed with discovery concerning this transaction. He claimed to have been unable to complete discovery because he had only become aware of this transaction within the past two weeks. Trans. of May 10, 1977, Status Hearing, at 12. Later it became clear that the Bieglers had been aware of the plan's adoption for more than 5 years.

**11.** *Compare* Order of June 2, 1977, *with* Notices of Depositions filed June 13, 1977, and June 16, 1977.

**12.** On each occasion, the Court eventually granted the motions for extensions of time or leave to file out of time, albeit with increasing reluctance. The seriousness of the charges

Additionally, on at least two occasions, the Bieglers have seriously misled the Court by misquoting or omitting material portions of documentary evidence which in turn required substantial responsive filings by the counterdefendants.[13] And during hearings before the Court, the Bieglers' counsel often ignored directions of and admonitions by the Court by delving into irrelevancies which substantially prolonged the proceedings.[14]

■ The record, therefore, is replete with convincing evidence of the Bieglers' bad faith both in initiating and prosecuting the counterclaim. The Bieglers have not attempted to contradict this evidence, to explicate their motives in bringing this action, or to justify the manner in which they prosecuted the claim.[15] Therefore, the Court finds that this case falls within the parameters of the "bad faith" exception, justifying the grant of the motions of Pomerantz Levy and Olwine Connelly.[16]

### III.

Although the Court concludes that an award of attorneys' fees is warranted, final determination of the amount of such award will be deferred pending appellate review of the Order of January 9, 1978 and the Order entered in connection with this Memorandum. *See Kinnear-Weed Corp. v. Humble Oil & Refining Co.,* 324 F.Supp. 1371, 1378 (S.D.Tex.1969), *aff'd and rem'd for assessment of att'ys fees,* 441 F.2d 631, 637 (5th Cir.), *cert. denied,* 404 U.S. 941, 92 S.Ct. 285, 30 L.Ed.2d 255 (1971).[17]

raised by the Bieglers required, in the Court's opinion, substantial leniency to assure the fullest opportunity for the Bieglers to substantiate their claims. *See, e. g.,* Order of June 2, 1977 (denying request for 3 month extension, granting 1 month extension and strictly limiting scope of discovery). Nevertheless, Mr. Delany was placed on notice of the serious implications of his consistent failure to meet the filing schedule set by the Court. *See, e. g.,* Order of May 19, 1977 ("This incident is not the first occasion in which he [Mr. Delany] has been tardy in filing his papers before this Court . . . In light of Mr. Delany's apparent disrespect for the Court, it has considered, but decided against, holding him in contempt for his conduct in this matter.")

13. First, Mr. Delany submitted a letter purportedly including the signatures of all "acquisitionees" although two of three pages of signatures were omitted. Second, Mr. Delany quoted portions of an NSMC brief out of context by omitting the definition of "acquisitionee" which had been included therein, thereby misleading the Court as to the significance of the legal position taken by NSMC in that brief. *Compare, Kiefel v. Las Vegas Hacienda, Inc.,* 404 F.2d 1163 (7th Cir. 1968), *cert. denied sub nom., Hubbard v. Kiefel,* 395 U.S. 908, 89 S.Ct. 1750, 23 L.Ed.2d 221 (1969) (bad faith shown in part by counsel's misstatements of law and fact). Only with respect to these two misrepresentations have the Bieglers attempted to explain their motivations in prosecuting their claims. In their opposition to the award of attorneys' fees, the Bieglers argue that the omissions were insignificant and related to irrelevancies. *See* Bieglers' Memorandum, at 25. In light of the significance of these misrepresentations to the Bieglers' theory of relief, *see*

Second Amended Counterclaim, ¶¶ 16E, 16I, these assertions are unavailing.

14. *See, e. g.,* Trans. of May 10, 1977 Status Hearing, at 30–36. On other occasions, he was evasive and unresponsive, if not fully dilatory. *See, e. g.,* Trans. of August 8, 1977 Summary Judgment Hearing at 11–12, 14–15, 22–23, 27–28, 55.

15. *See* note 7 *supra.*

16. Although Olwine Connelly has also sought to recover attorneys' fees on behalf of NSMC, note 2 *supra,* the only expenses incurred by NSMC related to the Bieglers' attempt to vacate the 1974 settlement. The Court concludes that due to NSMC's limited involvement in this proceeding, an award of its costs, as contrasted with the costs incurred by Olwine Connelly, need not be considered. In any event, the punitive and compensatory purposes of the bad faith exception are adequately served by the grant of attorneys' fees to the counterdefendant law firms. For these reasons, Olwine Connelly's motion will be denied to the extent it seeks to recover on behalf of NSMC.

17. Under controlling precedent, *see Evans v. Sheraton Park Hotel,* 164 U.S.App.D.C. 86, 95–8, 503 F.2d 177, 186–89 (1974); 6 J. Moore, Federal Practice, *supra* at 1715–16, more than a nominal award is warranted in this case. The Court, however, is fully aware that this counterclaim was concluded on motions for summary judgment (which purportedly is an expediting procedure) and that the counterdefendants have in some instances been overzealous in their defenses, filing some excessive, unnecessary, or repetitious documents. The Court is

Further, the Court has determined that there is no just reason for delay in the entry of judgment and, pursuant to Fed.R. Civ.P. 54(b), the Clerk will be directed to enter final judgment as to the Bieglers' counterclaim and motions for vacation of the 1974 settlement, for disqualification of Pomerantz Levy, and for leave to intervene in the class action, and the motions by Pomerantz Levy and Olwine Connelly for the award of attorneys' fees.

determined to assure that the award of attorneys' fees will not exceed reasonable bounds, and will carefully scrutinize the accountings of the counterdefendants to assure, *inter alia*, that their claims do not exceed the size of awards in similar cases. The counterdefendants will be directed to file their itemized accountings of litigation costs, including attorneys' fees, and to address briefly the various factors of the *Evans v. Sheraton Park* standard. The Bieglers will then be given an opportunity to respond, bearing in mind that the sole issue to be addressed is the magnitude of the award. As noted in the text, however, final assessment of attorneys' fees will be deferred pending appellate review.