Edward & Andrea P. **BREGSTONE,**
Plaintiffs,

v.

The **UNITED STATES,** Defendant.

No. 381–81T.

United States Claims Court.

Feb. 3, 1984.

---

Mark F. Werblood, Arlington, Va., for plaintiffs.

Mary M. Abate, with whom was Asst. Atty. Gen. Glenn L. Archer, Jr., Washington, D.C., for defendant.

## MEMORANDUM AND ORDER

MAYER, Judge.

The United States seeks to recover its costs and attorney's fees in defending against plaintiffs' claim for a tax refund because of plaintiffs' bad faith in filing the case and litigating it. Plaintiffs attribute the application for fees and costs to "personal differences in the conduct of litigation" and say they did not know when they filed their complaint or later that there was no basis for their claim.

## FACTS

By letter of November 21, 1977, the Internal Revenue Service (IRS) notified plaintiffs Edward and Andrea Bregstone of a proposed adjustment increasing their 1975 tax liability because they had received income which was not reported on their tax return. The IRS based its proposed adjustment on Form 1099 information reported by payers of interest and dividends. Attached to the letter was a list of the dividend and interest income not reported, including account numbers, and a summary of the calculations for the proposed adjustment. The IRS asked plaintiffs to compare this information with their records and provide any information that it was incorrect.

Plaintiffs responded by requesting that the IRS provide them with the reports of payments to them. They also suggested the IRS read the advice of the American Electric Power Company (AEP) on the taxable status of its dividend which was among those listed as not identified or fully reported on plaintiffs' return. The IRS provided a detailed explanation of the calculations for the adjustment which showed the amount of the AEP payment deemed to be unreported dividend income. It explained that it could not furnish copies of the reports requested because the information was submitted to the IRS on computer tapes. Plaintiffs then asked for a personal interview and a "complete list, including evidentiary documentation, of all items" referred to by the IRS.

An interview was scheduled with the local district office, but plaintiffs did not keep the appointment. They then wrote the IRS for another appointment on a specified date, explaining that it was difficult for Mr. Bregstone to obtain leave from his government job. By letter of October 4, 1978, the IRS agreed to reschedule the interview for the date suggested, and advised as follows:

Records furnished to us . . . indicate you received income of 399.00 which was not reported on your return. In order for this income not to be taxed to you, it is necessary for you to provide us with statements from the various companies or some other concrete evidence that the accounts are not yours. Otherwise, the amount must be included in income as

required under Section 81 of the Internal Revenue Code.

On November 2, 1978, two weeks after plaintiffs failed to keep the second appointment, the IRS received another letter from them stating that they had not received any response to their request to reschedule the interview. By letter that same day, the IRS offered to schedule yet another appointment and told plaintiffs the adjustment would be made unless they provided the necessary documentation within 30 days. When the IRS did not receive any information from plaintiffs within that time, it issued a notice of deficiency in the amount of $129.24. This, along with interest and a penalty, was paid by plaintiffs in June of 1979.

Two years later, proceeding *pro se,* plaintiffs filed a complaint against the United States in the old Court of Claims for $156.98, alleging that they were "entitled to relief as the Commissioner of Internal Revenue has improperly included certain items as income and has otherwise also acted improperly." Defendant filed an answer in August and mailed three interrogatories to plaintiffs to determine if they had filed a refund claim.

A week later, the judge then assigned to the case inquired about further proceedings. Plaintiffs suggested the judge not issue a pretrial order for three months because they intended to propose to defendant that the case be disposed of by means other than trial. Defendant informed the judge that it had served interrogatories on plaintiffs and wanted to see their answers before fully responding. No answers having been received by December 1, defendant advised plaintiffs by certified mail that it would file a motion to dismiss with prejudice if they did not respond to the interrogatories within 30 days.

On December 28, 1981, plaintiffs filed a request for admissions asking defendant to admit that they had filed a refund claim and that approximately 90% of the tax assessed was for non-taxable distributions made by AEP. Attached to this request were copies of two letters: the October 4,

1978, letter from the IRS rescheduling plaintiffs' appointment which they had earlier said they did not receive; and a November 16, 1978, letter from plaintiffs asking the IRS to explain how it could tax all of the AEP payment when AEP had informed them that 70.31% of the dividend was nontaxable return of capital.

In early January of 1982, defendant and the judge then assigned to the case received copies of a letter from plaintiffs dated December 9, 1981, saying that they had received defendant's August interrogatories only the week before, and purporting to respond to those interrogatories. Plaintiffs suggested in the letter that the parties "discuss this case informally as there appear to be no particularly difficult or complicated issues involved." Enclosed with defendant's letter was a copy of a purported refund claim, the December 28 request for admissions, and a request for the dividend and interest income reports received by the IRS and "all other relevant documents."

Unlike plaintiffs, defendant responded to the discovery requests by sworn statement. It admitted that 70.31% of the AEP dividends in question were not taxable, but denied that any part of the assessed deficiency was attributable to the non-taxable dividends. It attached a list of all dividend and interest payments in question which clearly showed that only $132, or 29.69%, of the $446 AEP payment was included as income. Defendant provided copies of all relevant documents contained in the IRS files, except for the Forms 1099 which had been destroyed, and plaintiffs' 1975 return.

At this point, defendant decided it would be more economical to proceed with the merits of the claim. To assert a defense that a refund claim had not been filed would raise questions of fact requiring a trial. It therefore served plaintiffs by certified mail in March of 1982 with another set of interrogatories about their grounds for claiming a tax refund.

Two weeks later, the court issued an order requiring plaintiffs to file a pretrial submission in late May. The day it was due, plaintiffs moved for an extension of

time to respond to the pretrial order and for an order directing defendant to produce their 1975 return and "complete copies" of the other IRS documents, including account numbers. Defendant provided a copy of the 1975 return which it had not previously sent on the assumption that plaintiffs already had a copy, but it opposed the motion to compel because it had already provided copies of all other documents. It also opposed the request for an enlargement of time to respond to the pretrial order because plaintiffs' submission was required to include some of the same information requested by defendant in its March interrogatories, to which plaintiffs had not responded.

The same day it filed its opposition to plaintiffs' motions, defendant moved to compel plaintiffs to answer the March interrogatories. Plaintiffs opposed on the grounds that they had mailed their answers to the interrogatories several weeks earlier, the original of which defendant has never received. They provided a copy of these "answers" which included the suggestion that "an informal discussion" was the most direct way to resolve their dispute. In its reply, defendant said that it had not received the "answers," except as part of plaintiffs' opposition to the motion, and noted that they were not responsive to the interrogatories. The court granted defendant's motion to compel answers to its March interrogatories and denied plaintiffs' motions to compel production of documents and to extend the time for filing their pretrial submission.

In early August, plaintiffs furnished a pretrial submission and "second answers" to defendant's interrogatories as ordered by the judge, but they were no more specific about the grounds for their claim than their complaint. At the same time, plaintiffs attempted to file a motion for partial summary judgment and for enlargement of their claim to cover the cost of a trip to New York to examine the books and records of AEP. This motion was not filed, however, because it did not comply with the rules of the court.

In September, defendant moved for an enlargement of time to file its pretrial submission, stating that the only issue in this case was whether plaintiffs had failed to report certain interest and dividend income and that it would file a dispositive motion after receiving supporting documentation. The motion was granted and defendant obtained affidavits, served subpoenas duces tecum, contacted representatives of the financial institutions involved, and scheduled depositions. After receiving duplicate information for the destroyed Forms 1099, defendant was able to cancel the depositions. During this period, the case was transferred to the United States Claims Court pursuant to section 403(d) of the Federal Courts Improvement Act of 1982, Pub.L. No. 97–164, 96 Stat. 25 (to be codified at 28 U.S.C. § 171 note).

On December 16, 1982, defendant filed its motion for summary judgment. Shortly thereafter, the judge presiding over the case retired and it was reassigned to this judge. In early January 1983, plaintiffs filed an objection to defendant's motion for summary judgment, a motion for judgment by default because defendant failed to file a pretrial submission, and a motion requesting that defendant be barred from filing a summary judgment motion because the Clerk had refused to file plaintiffs' motion for partial summary judgment. Having received no response to the motions from defendant, the court scheduled a hearing.

At the February 3, 1983, hearing, Edward Bregstone, representing himself and his wife as permitted by RUSCC 81(d)(6), proposed "[t]hat a meeting in chambers could likely settle this in 10 minutes." Counsel for defendant said that even though there was very little money and no significant legal issue involved, it was not willing to settle the case because it was considering a request for costs and attorney's fees which might require a decision on the merits. She added that defendant did not respond to plaintiffs' motions because it did not receive them and was not aware they had been filed. Because defendant declined to stipulate to a voluntary dismissal pursuant to

RUSCC 41(a)(1)(B), the court allowed plaintiffs 10 days to decide whether to file a motion to dismiss under RUSCC 41(a)(2) or to file a more detailed response to defendant's motion for summary judgment. *See Bregstone v. United States,* 1 Cl.Ct. 786, 787 (1983). The court also granted plaintiffs leave to withdraw their motion for a default judgment and denied their motion to bar the filing of defendant's motion for summary judgment. *Id.*

The next day, plaintiffs filed a motion to dismiss with prejudice pursuant to RUSCC 41(a)(2). Defendant did not oppose dismissal as long as it was not precluded from seeking its costs and attorney's fees under 28 U.S.C. § 2412. The court granted plaintiffs' motion and said it would address defendant's fee application if and when it is made. 1 Cl.Ct. at 788. Within 30 days, defendant filed an application to recover its costs and $1,000 in attorney's fees incurred in the defense of the case. Plaintiffs retained counsel and filed an opposition.

## CONTENTIONS

Defendant had a difficult time deciding on what authority it was entitled to attorney's fees. In response to plaintiffs' motion to dismiss, it said it did not want to be foreclosed from attorney's fees under the Equal Access to Justice Act, 28 U.S.C. § 2412(b). When it filed its application, it based the request on the court's inherent power to award fees when a party acted in bad faith, an exception to the "American Rule" that parties bear their own attorney's fees.

Plaintiffs asserted the court's dismissal order precludes defendant from recovering except under the Equal Access to Justice Act. They also said that they did not know their claim was frivolous, and suggested that if the conduct of the parties need be considered counsel for defendant should appear in court under oath.

Defendant replied that whether the application is based on common law or the Equal Access to Justice Act is irrelevant; because of plaintiffs' bad faith, both in bringing and in conducting the litigation, it should recover attorney's fees under either. However, defendant filed a supplemental memorandum in support of its application in which it reversed its field. It said it now believes that because the court is established under Article I of the Constitution, rather than Article III, it has neither inherent authority nor statutory authority under 28 U.S.C. § 2412(b) to award attorney's fees. Nevertheless, because this case was transferred here from the Court of Claims, *Ellis v. United States,* 711 F.2d 1571, 1573 (Fed.Cir. 1983), permits the court to award them under the statute. Under either the exception to the American Rule or the statute, the same level of misconduct entitles the prevailing party to attorney's fees. Plaintiffs filed nothing in response to this statement.

## DISCUSSION

The provision of the Equal Access to Justice Act on which this case turns, 28 U.S.C. § 2412(b), says:

Unless expressly prohibited by statute, a court may award reasonable fees and expenses of attorneys, in addition to the costs which may be awarded pursuant to subsection (a), to the prevailing party in any civil action brought by or against the United States or any agency and any official of the United States acting in his or her official capacity in any court having jurisdiction of such action. The United States shall be liable for such fees and expenses to the same extent that any other party would be liable under the common law or under the terms of any statute which specifically provides for such an award.

In traversing the various bases for its application before settling on the *Ellis* rationale for award under the Act, defendant has overlooked a distinction between this case and that one. In *Ellis,* the application for attorney's fees had been pending in the Court of Claims when it was transferred to this court by section 403(d) of the Federal Courts Improvement Act. The Court of Appeals found this dispositive. 711 F.2d at 1514. *Cf. Everett Plywood Corp. v. United States,* 3 Cl.Ct. 705, 708 (1983) (attorney's

fee application ordered filed by trial judge of Court of Claims before transfer to Claims Court). Here, while plaintiffs' tax claim was pending in the Court of Claims and transferred here, the application for attorney's fees was not filed until April 27, 1983, after the Court of Claims had expired. This statutory application for fees is collateral to and separate from the case during which the allegedly improper actions occurred. *See White v. New Hampshire Department of Employment Security,* 455 U.S. 445, 451, 102 S.Ct. 1162, 1166, 71 L.Ed.2d 325 (1982); *Gordon v. Heimann,* 715 F.2d 531, 537 (11th Cir.1983); *see generally Obin v. District No. 9 of the International Association of Machinists,* 651 F.2d 574, 582, 584 (8th Cir.1981). Decision on the application will not disturb or in any way affect the final judgment in the tax case. It is a new matter in this court and was not subject to the transfer provision of the Federal Courts Improvement Act.

Defendant's oversight, however, does not detain the court because its authority to award attorney's fees under the Equal Access to Justice Act has already been persuasively explained in *Bailey v. United States,* 1 Cl.Ct. 69, 71–74, *vacated in part on other grounds and remanded,* 721 F.2d 357 (Fed.Cir.1983). *See also Essex Electro Engineers, Inc. v. United States,* 4 Cl.Ct. 463, 465 (1984), and cases cited therein. The court subscribes to and adopts that analysis, *see Greenberg v. United States,* 1 Cl.Ct. 406, 407 (1983), and it is equally applicable to section 2412(b). When Congress is imprecise in its statutory language, there may be cause to search for evidence that it did not mean what it said. But in this statute, Congress authorized "any court having jurisdiction" over "any civil action" to award attorney's fees. If it meant to limit this authority to courts of the United States as defined in 28 U.S.C. § 451, it could readily have said so. *See, e.g.,* 26 U.S.C. § 7430(a)(2) (tax cases "brought in a court of the United States (including the Tax Court)"). *See Sullivan v. United States,* 4 Cl.Ct. 70, 74 (1983). Any suggestion to the contrary in the legislative history, *see* H.R.Rep. No. 1418, 96th Cong., 2d Sess. 17 (1980), *reprinted in* 1980 U.S. Code Cong. & Ad.News 4953, 4984, 4996, did not make it into the statute. *See United States v. Clark,* 454 U.S. 555, 560, 102 S.Ct. 805, 809, 70 L.Ed.2d 768 (1982).

Whatever else section 2412(b) may contemplate, it permits an award of attorney's fees when bad faith litigating conduct of the non-prevailing party would warrant an award as an exception to the American Rule that each party pay its own fees. *See, e.g., Aero Corp. v. Department of the Navy,* 558 F.Supp. 404, 418 (D.D.C.1983); *Cinciarelli v. Reagan,* 556 F.Supp. 99, 100 (D.D.C. 1983). Of course, under the exception even the non-prevailing party may have attorney's fees if the other party has engaged in that kind of conduct. *See Gordon v. Heimann,* 715 F.2d at 537; *Lipsig v. National Student Marketing Corp.,* 663 F.2d 178, 182 (D.C.Cir.1980). But our case falls squarely within the statutory framework.

 The rule in this country on which defendant relies is that a party must pay its own attorney's fees absent statutory or contractual provisions to the contrary. *Alyeska Pipeline Service Co. v. Wilderness Society,* 421 U.S. 240, 247, 95 S.Ct. 1612, 1616, 44 L.Ed.2d 141 (1975). The reasons for this are that a party "should not be penalized for merely defending or prosecuting a lawsuit, and that the poor might be unjustly discouraged from instituting actions to vindicate their rights if the penalty for losing included the fees of their opponents' counsel." *F.D. Rich Co. v. Industrial Lumber Co.,* 417 U.S. 116, 129, 94 S.Ct. 2157, 2165, 40 L.Ed.2d 703 (1974), *quoting Fleishmann Distilling Corp. v. Maier Brewing Co.,* 386 U.S. 714, 718, 87 S.Ct. 1404, 1407, 18 L.Ed.2d 475 (1967). One exception is that a court may award attorney's fees to a party whose opponent has "acted in bad faith, vexatiously, wantonly or for oppressive reasons." *Alyeska Pipeline Service Co. v. Wilderness Society,* 421 U.S. at 258, 95 S.Ct. at 1622; *F.D. Rich Co. v. Industrial Lumber Co.,* 417 U.S. at 129, 94 S.Ct. at 2165. This bad faith exception is premised on the belief that it will deter only those who know their claim

is baseless, but continue to pursue it for some impermissible reason, such as harassment. *See McCandless v. Great Atlantic & Pacific Tea Co., Inc.,* 697 F.2d 198, 200 (7th Cir.1983). An award of fees in these cases is therefore punitive. It is only incidental that the opposing party is compensated for an expense which should never have been incurred. *Hall v. Cole,* 412 U.S. 1, 5, 93 S.Ct. 1943, 1946, 36 L.Ed.2d 702 (1973); *Copeland v. Martinez,* 603 F.2d 981, 984 (D.C.Cir.1979).

The Equal Access to Justice Act, 28 U.S.C. § 2412, makes the United States subject to the common law exceptions to the American Rule, *id.* § 2412(b), and provides for the recovery of fees against the United States in certain other situations. *Id.* § 2412(d). It is a waiver of sovereign immunity. Insofar as pertinent here, section 2412(b) is also congressional recognition of the judicially created penalty for bad faith litigation and its applicability to both private parties and the government. *See also* 28 U.S.C. § 2412(c)(2). *Compare id.* § 2412(b) (fees may be awarded to "the prevailing party"), *with id.* § 2412(d) (fees may be awarded to "a prevailing party other than the United States").

Defendant qualifies as a prevailing party under section 2412(b) because it achieved a favorable disposition of the case. *See United States for Heydt v. Citizens State Bank,* 668 F.2d 444, 447 (8th Cir.1982); *Balcaen v. Herschberger,* 415 F.Supp. 333, 335 (E.D.Wis.1976). *See also Bregstone v. United States,* 1 Cl.Ct. at 788. A prevailing party is not only one who is victorious in a trial on the merits; it is also one who benefits from a dismissal of a groundless complaint. *See Corcoran v. Columbia Broadcasting System, Inc.,* 121 F.2d 575, 576 (9th Cir.1941); *Gould v. United States,* 3 Cl.Ct. 693, 695 (1983); *Alspach v. District Director of Internal Revenue,* 527 F.Supp. 225, 228 (D.Md.1981); *see also* H.R.Rep. No. 1418, 96th Cong., 2d Sess. 11 (1980), *reprinted in* 1980 U.S.Code Cong. & Ad.News 4984, 4990.

"An action is brought in bad faith when the claim is entirely without color and has been asserted wantonly, for purposes of harassment or delay, or for other improper reasons." *Haney v. United States,* 676 F.2d 584, 587 (Ct.Cl.1982), *quoting Browning Debenture Holders' Committee v. DASA Corp.,* 560 F.2d 1078, 1088 (2d Cir.1977). Defendant says plaintiffs knew when they brought their case that their claim was without merit and they had ulterior motives for bringing it. They had sufficient information in November of 1979 to determine whether or not the IRS assessment was erroneous; their failure to do so implicitly admits they had received the income questioned.

The IRS supplied plaintiffs with a detailed explanation of its calculations for the assessment and the account numbers to which the financial institutions had made the payments at issue. All they had to do to determine whether the calculations were correct was some simple arithmetic. They had already been informed by AEP that only 70.31% of its payment should be reported as dividend income. Accordingly, plaintiffs could have multiplied the total amount of the payment, $446, by 29.69% to determine the amount that should be included as income. The difference between this plus the other payments listed by the IRS, and the income they reported as dividend and interest income, equaled the IRS assessment. If they believed they had not received the listed payments, they could have compared the account numbers to which these payments had been made with their own records or checked with the financial institutions.

If plaintiffs had not been proceeding *pro se,* counsel surely would have had to check those calculations in evaluating the fitness of this claim for suit. An attorney is expected to perform the necessary research to evaluate a case before filing it. *McCandless v. Great Atlantic & Pacific Tea Co., Inc.,* 697 F.2d at 201. Whether through negligence, faulty records, or otherwise, plaintiffs nevertheless presented a non-existent claim. In the exercise of discretion, and giving them the benefit of any doubt, however, the court will not hold them to the

same exacting standards expected of counsel in deciding whether to bring suit.

This does not relieve plaintiffs of their obligation to withdraw their claim when sufficient facts became available in the course of the proceedings to demonstrate it had no merit. *See Nemeroff v. Abelson,* 704 F.2d 652, 659 (2d Cir.1983). From the record, the court concludes that plaintiffs knew or unquestionably should have known from the information supplied in defendant's March 15, 1982, response to their request for admissions that their claim was meritless. Defendant expressly admitted that only a portion of the AEP payment was taxable and denied that the assessment was attributable to the inclusion of the non-taxable portion of this payment as income. It again provided an explanation of the calculations and a list of all of the dividend and interest payments it had attributed to plaintiffs. With this information, they could not help but realize that the IRS had properly treated the AEP payment and correctly calculated the assessment.

■ In the course of these proceedings, plaintiffs were given more than ample opportunity to advance grounds for their complaint, and to amplify their general assertion of improper behavior by the IRS. They had every opportunity to provide some factual or legal support for their claim, but did not. Lack of merit is not in and of itself sufficient to support a finding of bad faith but, when considered along with their other actions, cannot be excused. *See McCandless v. Great Atlantic & Pacific Tea Co., Inc.,* 697 F.2d at 199; *Lipsig v. National Student Marketing Corp.,* 663 F.2d at 181.

Defendant refers to plaintiffs' conduct in other cases in this court, now pending, and the United States Tax Court, *Bregstone v. Commissioner,* No. 8400–77 (T.C. Oct. 9, 1979) (plaintiffs stipulated to deficiency of $839.21), to support its view that they brought this complaint in the hope defendant would settle it as a nuisance. However, the court considers this proffer only as showing these plaintiffs were no strangers to the courts; their conduct here stands on its own and amounts to vexatious litigation.

The record as a whole supports this finding. Plaintiffs engaged in dilatory tactics and misused the discovery privilege by requesting information they already had, could easily have obtained by other means, or already knew defendant could not provide. *See In re National Student Marketing Litigation,* 78 F.R.D. 726, 729–31 (D.D. C.1978), *aff'd,* 663 F.2d 178, 181 (D.C.Cir. 1980). They consistently failed to meet their deadlines and to abide by the rules of court. *See id.* Their motion to default defendant for failure to file its pretrial submission shows they were well aware of the need for compliance with filing time requirements. *See Pellegrino v. Marathon Bank,* 640 F.2d 696, 698 (5th Cir.1981). In addition, plaintiffs demonstrated a familiarity with the legal system not common among *pro se* plaintiffs. *See id.* Their pre-litigation conduct described above was a precursor of what was to come in court. It does not affect this fee determination, but shows what they knew or should have known about the validity of their case.

Plaintiffs' only response to the facts justifying a finding of bad faith submitted by defendant by affidavit and supporting documentation is that they should be disregarded and presented in open court. There is no need for a hearing, however, because the court's determination is based on an evaluation of the record already made. *See Nemeroff v. Abelson,* 704 F.2d at 656; *Nemeroff v. Abelson,* 620 F.2d 339, 347 (2d Cir.1980). Nothing defendant can say will change what is there; nothing plaintiffs can say will change their conduct in the litigation. To hold a hearing would be cosmetic and redundant, and unnecessary to a decision on this application. Even overlooking the filing of an invalid claim, plaintiffs' tactics during litigation justify an award of attorney's fees to defendant. *See Roadway Express, Inc. v. Piper,* 447 U.S. 752, 766, 100 S.Ct. 2455, 2464, 65 L.Ed.2d 488 (1980); *Nemeroff v. Abelson,* 704 F.2d at 659; *Lipsig v. National Student Marketing Corp.,* 663 F.2d at 181.

The court recognizes the discretion to award attorney's fees for bad faith must be exercised with restraint. *Roadway Express, Inc. v. Piper*, 447 U.S. at 764, 100 S.Ct. at 2463; *Nemeroff v. Abelson*, 704 F.2d at 654. It should invoke a fee-shifting sanction only in circumstances in which overriding purposes of justice are served. *Fleischmann Corp. v. Maier Brewing Co.*, 386 U.S. at 718, 87 S.Ct. at 1407; *Lipsig v. National Student Marketing Corp.*, 663 F.2d at 180. These circumstances exist here. Plaintiffs' groundless advocacy burdened defendant with unnecessary expense and diversion of resources. Defending any lawsuit, even one devoid of merit, is an expensive and time consuming process. *McCandless v. Great Atlantic & Pacific Tea Co., Inc.*, 697 F.2d at 201. The resources of defendant and this court are poorly spent on consideration of meritless claims and are therefore unavailable to devote to the claims of others. *See Asberry v. U.S. Postal Service*, 692 F.2d 1378, 1382 (Fed.Cir.1982); *Sterner v. United States*, 2 Cl.Ct. 253, 255 (1983). Only those who act in bad faith need fear that bringing suit in this court may result in the payment of their opponent's attorney's fees.

The court has weighed defendant's sworn statement that its attorney's fees in this case substantially exceeded the $1,000 it seeks, which plaintiffs have not questioned. In light of its activities, the figure appears eminently reasonable. Disregarding plaintiffs' filing of the suit, but finding they should have been certain they had no case after receiving defendant's response to their request for admissions in March of 1982, approximately half-way through this litigation, the court concludes it is just to award defendant half the fees requested. *See McCandless v. Great American & Pacific Tea Co., Inc.*, 697 F.2d at 202.

## CONCLUSION

Accordingly, the request for attorney's fees is granted and judgment will be entered for defendant in the amount of $500.

Defendant shall also have its costs. *See* 28 U.S.C. § 2412(a); RUSCC 54(d).

It is so **ORDERED**.