**In re Complaint of JUDICIAL MISCONDUCT.**

**No. 1.**

United States Claims Court.

April 15, 1983.

## ORDER

KOZINSKI, Chief Judge.

This complaint of judicial misconduct is brought on behalf of James L. Cole and possibly other plaintiffs in *Baskett v. United States,* 2 Cl.Ct. 356, and related cases.[1] The complaint raises various charges against the judge to whom the *Baskett* case is assigned and requests reassignment of the case to a different judge. RUSCC App. B, ¶¶ 3, 4 authorizes the chief judge either to dismiss the complaint or to refer it for further investigation.

## I. BACKGROUND

The complaint arises from ongoing litigation against the United States over the construction and operation of certain high-lift navigation locks and dams on the Ohio River. The plaintiffs claim that these locks and dams have increased the erosion of their lands and that the United States committed fraud when it bought from them certain flowage easements.

---

1. The complaint does not specify on whose behalf it is brought. However, it bears (incorrectly) the caption of *Baskett;* is signed by Norman E. Hay, counsel of record for plaintiffs in that case; names as of counsel Charles S. Gleason, another attorney for those plaintiffs; and attaches the affidavit of Mr. Cole.

*Baskett* is not the first case to present these issues. Virtually identical claims were vigorously and exhaustively litigated by the same attorneys before the same judge in *Loesch v. United States,* Nos. 240–75, 430–75, 435–75, 1–76, 111–76, 307–77. The trial judge ruled for defendant in a lengthy opinion, affirmed per curiam by the Court of Claims. 227 Ct.Cl. 34, 645 F.2d 905 (1981). Plaintiffs then filed unsuccessful petitions for rehearing en banc, to reopen proof, for certiorari and for rehearing from the denial of certiorari. 227 Ct.Cl. 35, 63, 645 F.2d 905 (1981); 454 U.S. 1099, 102 S.Ct. 672, 70 L.Ed.2d 640 (1981); 455 U.S. 984, 102 S.Ct. 1496, 71 L.Ed.2d 695 (1982).

Approximately one month after the Court of Claims affirmance in *Loesch,* plaintiffs in *Baskett* moved to disqualify the trial judge. The motions strongly criticized the *Loesch* opinion and charged that various findings made by the judge would preclude a fair trial in *Baskett.* Judge Miller, then Chief of the Trial Division, denied the motions. He noted that "disqualification of a judge requires that the bias or prejudice be 'personal', *i.e.,* its origin is extrajudicial. Thus, rulings in prior cases, previously expressed views of the law, or prior adverse decisions against a present litigant are all legally insufficient for disqualification." Order of May 29, 1981, at 4. Judge Miller found that the matters raised in the motions for disqualification could be raised as exceptions to the trial judge's decision, but were improper grounds for disqualification of that judge in a separate case. *Id.*

Dissatisfied with Judge Miller's ruling, plaintiffs sought review in the appellate division. The court adopted Judge Miller's analysis, holding that the reasons given by plaintiffs were "inadequate" to establish bias or prejudice and characterizing plaintiffs' arguments as "unsound." Order of July 21, 1981, 228 Ct.Cl. 788.

Undaunted, plaintiffs next filed a petition for writ of mandamus with the United States Supreme Court. The petition reiterated plaintiffs' dissatisfaction with the trial judge's handling of *Loesch* and argued that "the Order denying disqualification of [the trial judge] amounted to an unconstitutional delegation of authority to an Article I judge." Petition at 24. The Supreme Court summarily denied the petition. 454 U.S. 1051, 102 S.Ct. 618, 70 L.Ed.2d 604 (1981).

## II. THE COMPLAINT OF JUDICIAL MISCONDUCT

A. Our procedure for processing complaints of judicial misconduct, adopted pursuant to 28 U.S.C. § 372(c)(17) (Supp.1982), provides that any person may allege that a judge "has engaged in conduct prejudicial to the effective and expeditious administration of the business of the court." RUSCC App. B, ¶ 1. The chief judge may dismiss the complaint if he finds (1) that it does not allege such conduct; (2) that it directly relates to the merits of a decision or procedural ruling; or (3) that it is frivolous. If he does not dismiss the complaint (and does not find that corrective action has already been taken) the chief judge must appoint a committee to investigate the charges. *Id.* at ¶¶ 3, 4.

■ B. In this case the complaint must be dismissed as a transparent attempt by the *Baskett* plaintiffs to relitigate the issues conclusively resolved by the denial of their motions for disqualification of the trial judge. Much of the complaint presents the same criticisms of the *Loesch* decision that appeared in the motions for disqualification, sometimes even in the same language.[2] Not only are such matters barred by the court's prior rulings, but they also relate *directly to the merits of the judge's* decision and therefore cannot form the basis for a complaint of judicial misconduct. 28 U.S.C. § 372(c)(3)(A)(ii); RUSCC App. B, ¶ 3(a)(1)(ii).

---

**2.** A revealing aspect of the complaint is the relief which is sought: removal of the judge from a particular case. This is not the type of relief contemplated by the judicial misconduct procedure. *See* 28 U.S.C. § 372(c)(6)(B); RUSCC App. B, ¶ 6(b); pp. 258–59 *infra.*

▪ The complaint also takes exception to various statements and rulings made by the judge at a pretrial conference held on December 7, 1982. Complainants argue that it was misconduct for the judge to refuse to define the issues for trial; to prohibit presentation of certain testimony; to express a view as to the admissibility of a document; to encourage the filing of a dispositive motion in order to narrow or define the parties' legal positions; and to refuse to "believe his wife's definition of a flood, Webster's definition of a flood, or anyone's definition of a flood." Complaint at 4. Aside from the patent frivolousness of these allegations, they directly concern the judge's rulings in the case and therefore are specifically excluded from the proper bounds of a complaint for judicial misconduct. 28 U.S.C. § 372(c)(3)(A)(ii); RUSCC App. B, ¶ 3(a)(1)(ii).

▪ The only allegations falling even remotely within the proper ambit of a complaint for judicial misconduct are the following:

"2. [The judge] expressed chagrin that complaints of judicial misconduct[3] had touched him, pp. 10 & 53.

3. [The judge] admitted ex parte counseling with [defendant's attorney] concerning the filing of pleadings in the pending litigation. pp. 36 & 45."

Complaint at 3. These allegations are, however, unequivocally belied by the materials accompanying the complaint. A careful review of the pretrial conference transcript reveals that the judge expressed not the slightest personal displeasure or animosity towards plaintiffs because of their earlier motions for disqualification.[4] Moreover, the charge of ex parte counseling appears to be a complete fabrication; nothing in the materials submitted supports this allegation.

The court finds that the matters alleged as judicial misconduct either directly relate to the merits of a decision or procedural ruling, or are frivolous, or both. The complaint must therefore be dismissed.

## III. THE ATTORNEYS' CONDUCT

▪ While the complaint raises no serious issues as to the conduct of the judge against whom it is directed, it raises very substantial concerns about the two attorneys who presented it to the court. The circumstances surrounding the filing of the complaint strongly suggest that the attorneys who prepared it—Norman E. Hay and Charles S. Gleason—have neglected their professional responsibilities as members of the bar of this court. Their misuse of the judicial complaint procedure, and other possible abuses of the adversary system suggested by this record, raise concerns that this court may not responsibly ignore.

A. Our procedures for handling complaints of judicial misconduct were promulgated pursuant to the Judicial Councils Reform and Judicial Conduct and Disability Act of 1980, Pub.L. No. 96–458, § 3, 94 Stat. 2035, 2036–40. The Act's purpose was to create a procedure that would deal with allegations of judicial misconduct which did not amount to high crimes and misdemeanors (the standard for impeachment) yet which warranted investigation and possible corrective action. S.Rep. No. 362, 96th Cong., 2d Sess. 3–5, *reprinted in* 1980 U.S. Code Cong. & Ad.News 4315, 4317–18.

Both proponents and opponents of the measure were concerned that the new procedure not be misused. The Senate Committee on the Judiciary repeatedly emphasized that "[f]ederal judges . . . should not be harassed in the legitimate exercise of

---

**3.** While the statement mistakenly refers to "complaints of judicial misconduct" it clearly alludes to the earlier motions for disqualification. That counsel use the terms interchangeably shows again that the complaint is merely a rehashing of the earlier motions.

**4.** In any event, an expression of bias in a single case cannot form the basis for a complaint of

judicial misconduct. *In re Charge of Judicial Misconduct,* 595 F.2d 517 (9th Cir.1979). Bias in a particular case is the problem addressed by 28 U.S.C. § 455(a); judicial misconduct requires a showing of "a pattern of partiality extending beyond the particular litigation." 595 F.2d at 517.

their duty to interpret and apply the law," and noted that the legislation "is not designed to assist the disgruntled litigant who is unhappy with the result of a particular case." S.Rep. at 6, 8, 1980 U.S.Code Cong. & Ad.News at 4320, 4322.[5]

The courts have stressed with unyielding consistency that complaints of judicial misconduct may not be grounded merely upon a litigant's dissatisfaction with a judge's handling of a particular case. *Torpy v. United States,* No. 3, slip op. at 2 (Ct.Cl. Aug. 30, 1982); *In re Complaint of Eastman of Judicial Misconduct,* No. 2, slip op. at 2 (Ct.Cl. Apr. 28, 1982); *Arshal v. United States,* No. 1, slip op. at 3 (Ct.Cl. Dec. 10, 1981); *In re Charge of Judicial Misconduct,* 691 F.2d 924, 925 (9th Cir.1982); *In re Charge of Judicial Misconduct,* 613 F.2d 768, 769 (9th Cir.1980); *In re Charge of Judicial Misconduct,* 593 F.2d 879, 880–81 (9th Cir.1979). Chief Judge Browning of the Ninth Circuit explicitly ruled that invocation of the procedures in order to affect the disposition of a single case "is an abuse of the Procedures," emphasizing that these procedures "are not intended to provide a tactical option to counsel in litigation, but to promote the 'effective and expeditious administration of the business of the courts'." 593 F.2d at 880–81.

The complaint presented by attorneys Hay and Gleason flies in the face of these authorities. It is nothing more than the latest machination in a prolonged but groundless campaign to dislodge the *Baskett* case from the judge who ruled against them in *Loesch.* Filing the complaint is particularly egregious in light of the court's prior rejection of plaintiffs' motions for disqualification. As Judge Miller stated then, "[i]t would be intolerable if in a multi-judge court either party could be free to pick the trial judge he deemed most favorable to him on the basis of his past decisions or employment." *Baskett,* Order of May 29, 1981, at 6. The attempt to achieve this intolerable result through yet another means—a means which Congress and the courts have sternly and repeatedly admonished is not to be used for such a purpose—casts serious doubt upon counsel's willingness to live up to their responsibilities.

In addition to improperly invoking the judicial misconduct procedure, the attorneys made certain charges against the judge which appear to be grossly misleading or even untruthful.[6] *See* p. 258 *supra.* An unfounded attack upon a judge by parties appearing before him constitutes a particularly serious abuse because it can impair the integrity of the adjudicatory process by provoking bias or creating the appearance of bias. For example, counsel here eagerly seized upon passing references by the judge to the prior motions for disqualification, attempting to characterize the remarks as prejudice. *See* p. 258 *supra.* Counsel's brazen attempt to manufacture the appearance of bias or prejudice where none exists goes far beyond the proper bounds of advocacy. *See Code of Professional Responsibility* DR 8–102(B) (1979).

Not only have attorneys Hay and Gleason abused the judicial misconduct procedure, they have also forced this court to devote

---

5. *See also* S.Rep. at 3, 1980 U.S.Code Cong. & Ad.News at 4317; additional views of Senator Howell Heflin, *id.* at 20, 1980 U.S.Code Cong. & Ad.News at 4333–34 ("the decision-making functions of judges can only be reviewed through the traditional and conventional appellate process ... [and] disciplinary measures [are not] to be taken against a judge because some might disagree with his decisions or his judicial philosophy"); additional [dissenting] views of Senator Paul Laxalt, *id.* at 30, 1980 U.S.Code Cong. & Ad.News at 4343 (the existence of these procedures "will give dissatisfied ... litigants grounds to make themselves heard, and thereby to affect the independence of the judge").

6. Where an attorney has reasonable cause to believe that a judge before whom he is appearing is subject to a conflict of interest or is guilty of misconduct, he has a right, indeed a solemn duty, to come forward with the information. We must do nothing which will inhibit the presentation of good faith charges concerning judges. For that reason, a strong presumption of propriety attaches to any such complaint, and courts must indulge every reasonable doubt against the inference that counsel is acting in bad faith. As this case demonstrates, however, the presumption is not irrebuttable.

its limited resources to ruling on a totally frivolous matter. Imposition of this unjustified burden on the court is further evidence that counsel lack the proper measure of professional restraint and judgment. The level and complexity of litigation in this country has exploded during the last few decades. *See* Burger, *Annual Report on the State of the Judiciary,* 69 A.B.A.J. 442, 443 (1983). The crush of litigation has placed severe strains on our adversary system, causing serious delays and greatly increased costs. This is a severe problem at all levels of litigation and it imposes upon counsel and the courts a grave responsibility to prevent abuse of legal processes.

Our system of justice offers counsel a wide range of procedural tools in fulfilling their professional responsibilities. This latitude promotes the flexibility and effectiveness of the adversary process, but the system cannot operate if every attorney exercises every procedural option technically available to him, regardless of how frivolous or how inappropriate to the legitimate presentation of his case. As Chief Judge Markey recently noted on behalf of the Court of Appeals for the Federal Circuit, "[t]he filing of and proceeding with clearly frivolous [matters] constitutes an unnecessary and unjustifiable burden on already overcrowded courts, diminishes the opportunity for careful, unpressured consideration of nonfrivolous [matters], and delays access to the courts of persons with truly deserving causes." *Asberry v. USPS,* 692 F.2d 1378, 1382 (Fed.Cir.1982).[7]

While attorneys must represent clients zealously, they must also stay within the bounds of the law. *Code of Professional Responsibility* Canon 7, DR 7–102(A)(1), (2). Where abuses occur, sanctions against the attorney may be appropriate. *Id. See Panagopoulos v. INS,* 434 F.2d 602, 603–04 & n. 4 (1st Cir.1970). Disciplining errant attorneys is never pleasant but judges have a responsibility to the public to police the professional behavior of the officers of their court.[8] *See Code of Judicial Conduct* Canon 3(B)(3) (1972) ("[a] judge should take or initiate appropriate disciplinary measures against a ... lawyer for unprofessional

**7.** The Chief Justice of the United States has noted that "[l]awyers are officers of the courts and have a high duty not to abuse the monopoly which they have in terms of access to the courts.... [A] lawyer has not only the right, but a duty, to decline to press a frivolous case and impose burdens on the courts, while legitimate claims wait to be determined." *Interview with Warren E. Burger: Unclogging the Courts—Chief Justice Speaks Out,* U.S. News & World Report, Feb. 22, 1982, at 40 (hereinafter *U.S. News Interview*). The Chief Justice admonished that "in some cases the lawyer, not the client, should be subject to money sanctions for abusing the processes of the courts." *Id.* at 39–40.

**8.** A report prepared by an American Bar Association Committee headed by Justice Tom C. Clark emphasized the need for more active enforcement of professional standards of behavior. Leaving no doubt about the urgency of the problem, the report opened with this alarming paragraph:

> After three years of studying lawyer discipline throughout the country, this Committee must report the existence of a scandalous situation that requires the immediate attention of the profession. With few exceptions, the prevailing attitude of lawyers toward disciplinary enforcement ranges from apathy to outright hostility. Disciplinary action is practically nonexistent in many jurisdictions; practices and procedures are antiquated; many disciplinary agencies have little power to take effective steps against malefactors.

ABA Special Committee on Evaluation of Disciplinary Enforcement, *Problems and Recommendations in Disciplinary Enforcement* 1 (1970) (hereinafter *Clark Committee Report*).

The Chief Justice has repeatedly cited the findings of the report and urged that firm action be taken to deal with attorney misconduct in order to enhance public confidence in the legal profession. *See, e.g., In re Admission of Caplinger,* 49 U.S.L.W. 3862, 3862–63 & nn. 5 & 6 (U.S. May 18, 1981) (Burger, C.J., dissenting); *U.S. News Interview, supra* n. 7, at 37. In words which are as clear as they are pertinent to our situation, the Chief Justice has noted:

> If we are to maintain public confidence in our profession, it is imperative that courts and local and state bar associations take positive action to deal with every manifestation of professional misconduct. This must be done fearlessly and with fairness to the public, the profession, and the individuals involved.

Burger, *The Role of the Law School in the Teaching of Legal Ethics and Professional Responsibility,* 29 Clev.St.L.Rev. 377, 387 (1980) (hereinafter *Teaching of Legal Ethics*).

conduct of which the judge may become aware"); *Booth v. Fletcher,* 101 F.2d 676, 680–81 (D.C.Cir.1938), *cert. denied* 307 U.S. 628, 59 S.Ct. 835, 83 L.Ed. 1511 (1939); *In re Weed,* slip op. at 13 (undated Court of Claims opinion *circa* 1870, lodged with the clerk of this court). The imposition of deserved sanctions upon counsel who abuse the court's processes is necessary "to provide both specific and general deterrence of such conduct." *Litton Systems, Inc. v. AT & T,* 91 F.R.D. 574, 576 (S.D.N.Y.1981).[9]

B. The limited record presented in this proceeding raises grave concern that attorneys Hay and Gleason may have engaged in a pattern of abuse ranging far beyond the complaint of judicial misconduct. There is reason to believe that they have, on at least one occasion, filed with the United States Department of Justice apparently unfounded charges of misconduct against opposing counsel in *Loesch;*[10] that they may have harassed opposing party's witnesses; and, on attorney Hay's own admission, that he has been threatened with contempt in other courts and admonished about taking frivolous appeals.

■■■ Courts do not normally police the relationship between attorney and client. However, the filing of a torrent of virtually useless paper in this court and elsewhere raises doubts about whether the attorneys in question are realistically assessing the chances of success of various tactics and candidly informing their clients thereof. The court cannot overlook the possibility that counsel may be generating fees (or gaining some other advantage) by their litigious activity, without providing a commensurate benefit to their clients. The complaint of judicial misconduct, consisting of 9 typed pages, 89 pages of transcript and 47 additional pages of photocopied appendix, did absolutely nothing to further the cause of the *Baskett* plaintiffs; no attorney of reasonable competence could have thought that it would. If clients were charged in any manner for the preparation of these materials, their money was wasted. Under such circumstances, a court has the responsibility, even absent a complaint,[11] to inquire into the financial arrangement between attorney and client, *Rosquist v. Soo Line Railroad,* 692 F.2d 1107, 1111 (7th Cir. 1982) (Davis, J., by designation), or to refer the matter to an ethics committee. *United States v. Vague,* 697 F.2d 805, 807–08 (7th Cir.1983).

## IV. CONCLUSION

A. The complaint of judicial misconduct is dismissed. The clerk is directed to serve copies of this order upon each of the plaintiffs in *Baskett* and related cases, their counsel, the defendant and its counsel, and the judge against whom the complaint was lodged.

---

9. The inherent authority of a court to control admissions to its bar and to impose appropriate sanctions upon attorneys who misbehave is unquestioned. *See Roadway Express, Inc. v. Piper,* 447 U.S. 752, 765–66, 100 S.Ct. 2455, 2463–64, 65 L.Ed.2d 488 (1980); *Flaksa v. Little River Marine Construction Co.,* 389 F.2d 885, 888–89 & n. 10 (5th Cir.), *cert. denied* 392 U.S. 928, 88 S.Ct. 2287, 20 L.Ed.2d 1387 (1968). This authority appears to be of constitutional dimensions and not subject to legislative abridgement. *See Roadway Express,* 447 U.S. at 764–65, 100 S.Ct. at 2463; *Clark Committee Report, supra* n. 8, at 10–18.

10. While charges against opposing counsel, like those against a judge, may be appropriate under certain circumstances, counsel have a responsibility to avoid interjecting personal animosity into the adversary process. As the Chief Justice has noted, "[c]ertain rules of behavior, etiquette and manners are the indispensable lubricant of our inherently contentious system of adversary justice." *Teaching of Legal Ethics, supra* n. 8, at 381. *See* Burger, *The Necessity for Civility,* 52 F.R.D. 211 (1971).

11. The fact that no complaint has been filed diminishes neither our authority nor our duty to deal with misconduct of which we have become aware. *See People ex rel. Karlin v. Culkin,* 248 N.Y. 465, 162 N.E. 487 (1928) (Cardozo, C.J.). Indeed, the failure of authorities to investigate irresponsible conduct absent a specific complaint has been cited as one of the failings of current disciplinary systems. *Clark Committee Report, supra* n. 8, at 60–66. A court such as ours, which has nationwide jurisdiction, has special responsibilities to police the conduct of its attorneys because counsel might take actions not coming to the attention of local disciplinary boards. *See id.* at 67–70.

B. Attorneys Norman E. Hay and Charles S. Gleason have violated their responsibilities as members of the bar of this court by abusing the judicial complaint procedure. For this misconduct, they are publicly reprimanded. In addition, they are each assessed as a sanction the sum of $500. *See In re Tranakos,* 639 F.2d 492 (9th Cir. 1981); *In re Hanson,* 572 F.2d 192 (9th Cir.1977). These sums shall be paid by certified check to the clerk of this court no later than May 2, 1983. Neither attorney may seek reimbursement of any portion of these sums from their clients.

C. The record suggests that these attorneys may have engaged in additional questionable conduct. However, much of the information concerning that conduct is unclear and needs closer examination. State disciplinary committees and other courts may be in a better position to evaluate it. To the extent possible, therefore, the clerk is directed to transmit copies of this order to the appropriate disciplinary authorities of any bar association of which attorneys Hay and Gleason are members, and to the clerk of every court to which they are admitted, for any investigation or other action that may be deemed appropriate. The clerk shall request that this court be advised of any action taken on the basis of this transmittal.

IT IS SO ORDERED.