**LIBERIAN POPLAR TRANSPORTS, INC., Plaintiff,**

v.

**The UNITED STATES, Defendant.**

No. 91–1320C.

United States Claims Court.

May 20, 1992.

A. Robert Degen, Philadelphia, Pa., attorney of record for plaintiff. Krusen, Evans and Byrne, of counsel.

Arthur J. Volkle, Jr., Washington, D.C., with whom was Asst. Atty. Gen., Stuart M. Gerson, for defendant.

## OPINION

FUTEY, Judge.

This case is before the court on defendant's motion for summary judgment. Plaintiff seeks reimbursement under the Clean Water Act, 33 U.S.C. § 1321(i) (1988), for amounts expended to cleanup oil leaked from one of plaintiff's vessels. Plaintiff asserts that there are issues of material fact and, thus, summary judgment should be denied. Alternatively, plaintiff contends that the cause of the spill was a storm encountered by plaintiff's vessel and that this storm constituted an act of God, one of the enumerated exceptions to liability under the Clean Water Act. In addition, plaintiff avers that the crew of the vessel took reasonable precautions under the circumstances.

### Factual Background

Plaintiff, Liberian Poplar Transports, Inc., is the owner of the M/V World Radiance (World Radiance), a vessel operated by Worldwide Shipping Agency, Inc. On November 20, 1989, the World Radiance was transferring oil at the Chevron Hog Island facility in Philadelphia, Pennsylvania. The transfer process began at approximately 1:00 p.m. Plaintiff alleges that the captain of the World Radiance had checked the weather conditions on the radio prior to commencing transfer operations and had found no reports of severe weather.

At 8:13 p.m., November 20, 1989, the National Weather service in Philadelphia issued a Severe Thunderstorm Watch for the Philadelphia Metropolitan Area:

> At 8:00 pm ... a line of thunderstorms extended from the Poconos to the Lower Susquehanna Valley in Pennsylvania. These thunderstorms contained wind gusts up to 85 mph as they moved through central Pennsylvania. The thunderstorms will approach the western suburbs of Philadelphia around 8:15 pm....

At 8:55 p.m., the National Weather Service issued a Severe Thunderstorm Warning that covered the area of the Chevron Hog Island facility. The crew of the World Radiance had not monitored the radio for weather conditions since the transfer began. Nonetheless, plaintiff contends that the third mate on watch observed no signs of the impending storm as late as 9:15 p.m. that night. Because of the storm's sudden onset, plaintiff maintains that the crew was unaware of the storm until it virtually was upon them.

By 9:26 p.m., the weather service at the Philadelphia National Airport, near Chevron Hogs Island, observed winds of 40 knots, gusting to 53 knots.

At approximately 9:30 p.m., heavy winds associated with the storm caused the World Radiance's mooring lines to part, pushing the vessel away from the pier. Although cargo operations shut down immediately when the storm first struck, approximately 100 barrels of oil were dumped into the Delaware River. By order of the United States Coast Guard, plaintiff subsequently cleaned up the oil in the Delaware River.

On July 29, 1991, plaintiff filed this complaint seeking reimbursement under the Clean Water Act, 33 U.S.C. § 1321(i), for costs incurred in the cleanup of the World Radiance's oil spill. Defendant moved for summary judgment on December 2, 1991.

### I. Summary Judgment

Summary judgment is an integral part of the federal rules; it is designed "to secure

the just, speedy and inexpensive determination of every action." *Celotex Corp. v. Catrett*, 477 U.S. 317, 327, 106 S.Ct. 2548, 2555, 91 L.Ed.2d 265 (1986) (*quoting* Fed. R.Civ.P. 1). Summary judgment is appropriate when the pleadings raise no genuine dispute as to any material fact, and the moving party is entitled to judgment as a matter of law. RUSCC 56; *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 247, 106 S.Ct. 2505, 2509, 91 L.Ed.2d 202 (1986). The moving party bears the burden of establishing an absence of evidence to support the non-movant's case. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970). The party opposing summary judgment has the burden of showing sufficient evidence, not necessarily admissible, of a genuine issue of material fact in dispute. *Celotex Corp.* at 324, 106 S.Ct. at 2553. Any doubt over factual issues must be resolved in favor of the party opposing summary judgment, *Litton Indus. Prods., Inc. v. Solid State Sys. Corp.*, 755 F.2d 158, 163 (Fed. Cir.1985), to whom the benefit of all presumptions and inferences run. *H.F. Allen Orchards v. United States*, 749 F.2d 1571, 1574 (Fed.Cir.1984), *cert. denied*, 474 U.S. 818, 106 S.Ct. 64, 88 L.Ed.2d 52 (1985).

■ In the instant case, all the facts concerning the storm that caused the oil spill are before the court. Plaintiff argues, nonetheless, that there are material issues as to the elements of an act of God, one of the enumerated exceptions to liability under the Clean Water Act. This contention is without merit. The determination of the elements of the term "act of God," as set out in 33 U.S.C. § 1321, is a question of law for the court to decide. Accordingly, this case is ripe for summary judgment.

## II. *The Clean Water Act*

■ The Clean Water Act mandates that it "is the policy of the United States that there should be no discharges of oil or hazardous substances into or upon the navigable waters of the United States." *Total Petroleum v. United States*, 12 Cl.Ct. 178, 180 (1987) (*quoting* 33 U.S.C. § 1321 (1988)). Moreover, under the Act, the cost of cleanup, should a discharge occur, lies with the owners of the facility or vessel discharging the oil. *Cities Serv. Pipe Line Co. v. United States*, 4 Cl.Ct. 207, 209 (1983) [citations omitted]. Thus, it is the clear congressional intent that "cases where the public pays for cleanup [are] the exception, not the rule." *Id.*

## III. *Act of God Exception to the Clean Water Act*

■ Plaintiff contends that under 33 U.S.C. § 1321(i) it should be reimbursed for the cost of the cleanup of the Delaware River. 33 U.S.C. § 1321(i) provides:

> In any case where an owner or operator of a vessel ... from which oil or a hazardous substance is discharged ... acts to remove such oil ... such owner or operator shall be entitled to recover the reasonable costs incurred in such removal upon establishing, in a suit which may be brought against the United States Government in the United States Claims Court, that such discharge was caused solely by (A) an act of God, (B) an act of war, (C) negligence on the part of the United States Government, or (D) an act or omission of a third party without regard to whether such act or omission was or was not negligent, or of any combination of the foregoing causes.

The Clean Water Act imposes strict liability upon the owner or operator unless he "can prove that one of the exceptions does apply." *Sabine Towing & Transp. Co. v. United States*, 229 Ct.Cl. 265, 268, 666 F.2d 561 (1981). In enacting the statute—

> Congress determined that a system of absolute liability with specified limits best protected the public interest. Such a system, it was felt, properly placed the cost for an oil spill on the responsible party, and not on the general public.

*Reliance Ins. Co. v. United States*, 230 Ct.Cl. 390, 397–98 (1982). Accordingly, "plaintiff must carry an extraordinarily heavy burden to recover cleanup costs from the United States." *St. Paul Fire & Marine Ins. Co. v. United States*, 4 Cl.Ct. 762, 768 (1984). A plaintiff must show:

First ... that the spill was entirely the result of one or more of the causes listed in section 1321(i)(1).... Second, even where causation is so limited, plaintiff must establish that it could not have prevented the spill through the exercise of due care.

*Cities Serv.* at 209. Plaintiff contends that the storm that hit the World Radiance was an act of God under the statute and, thus, plaintiff should be excused from liability for the cleanup.

■ The definition of an act of God can be gleaned from the statute, legislative history, and case law specifically construing § 1321.[1] The statute defines an act of God as "an act occasioned by an unanticipated grave natural disaster." 33 U.S.C. § 1321(a)(12). The legislative history further elucidates that an act of God encompasses—

> [O]nly those acts about which the owner *could have had no foreknowledge, could have made no plans to avoid, or could not predict....* Thus, grave natural disasters which *could not be anticipated* in the design, location, or operation of the facility or vessel ... would be outside the scope of the owner's or operator's responsibility. [Emphasis added].

Conf.Rep. No. 940, 91st Cong., 2d Sess., *reprinted in* 1970 U.S.Code Cong. & Admin.News 2712, 2722. *See also United States v. West of England Ship Owner's Mut. Protection & Indem. Ass'n.*, 872 F.2d 1192, 1199 n. 13 (5th Cir.1989) (discussing foreseeability standard under § 1321).

Plaintiff contends that because the storm was not *well* forecasted, and was not *visually* foreseeable by the ship's watch, that the storm was not anticipated. Nonetheless, the statute and the legislative history do not subscribe to a subjective test for anticipation. Whether the crew did or did not actually anticipate the storm is beside the point. If the crew had monitored the radio for weather conditions, they clearly *could* have anticipated and taken precautions against the storm. Although the storm was not *well* forecasted, it was in fact forecasted at least a half-hour before it hit and there was an indication of bad weather in a storm watch issued approximately an hour before the storm struck. Thus, the storm could have been anticipated and plaintiff has failed to establish that this is an act of God, one of the enumerated exceptions under the statute.

### Conclusion

■ For the foregoing reasons, defendant's motion for summary judgment is hereby granted.[2] The clerk is directed to dismiss the complaint. No costs.

---

1. In addition, the court in *Sabine Towing & Transp. Co. v. United States,* 229 Ct.Cl. 265, 269, 666 F.2d 561 (1981), specifically found:

   > We now believe that common-law cases on acts of God, to the extent that they embody judicial decisions on allocating the burden of mishap, should not be used in determining the allocation that Congress intended in section 1321.

2. Defendant also moves for sanctions against opposing counsel under RUSCC 11 for allegedly signing a pleading that was without merit. This court finds that the phrase "act of God" is a term over which reasonable minds could differ. Moreover, "a party need not succeed on the merits to escape the harshness of Rule 11 sanctions." *Deuterium Corp. v. United States,* 21 Cl.Ct. 132, 137 (1990). Hence sanctions in this case are inappropriate. Accordingly, defendant's motion for Rule 11 sanctions is denied.