ATLANTIC RICHFIELD COMPANY, Plaintiff,

v.

UNITED STATES of America, Defendant.

No. 241–79L.

United States Claims Court.

Oct. 13, 1982.

---

Horace E. Campbell, Jr., Atlantic Richfield Co., Houston, Tex., for plaintiff.

Nancy S. Bryson, with whom was Asst. Atty. Gen. Carol E. Dinkins, Washington, D.C., for defendant.

## OPINION

KOZINSKI, Chief Judge.

Plaintiff sued under 33 U.S.C. § 1321(i) to recover from the United States the costs of cleaning up an oil spill. The parties have filed cross motions for summary judgment based upon stipulated facts.

## FACTS

The incidents which are the subject of this action took place at plaintiff's petroleum terminal in Brimingport, Alabama. The terminal is located on a 17 acre site bordered by the Black Warrior River (a navigable water of the United States) on the north, and Alabama Highway 269 on the south. The western portion of the terminal consists of a tank farm and a tanker truck loading facility. Immediately to the east, in the center portion of the property, is a warehouse. The warehouse abuts the river on the north and a parking lot on the south. Running along the eastern edge of the warehouse and the parking lot is a ditch which extends to the river. Another ditch runs west from the southwestern corner of the parking lot, then turns at a right angle towards the river, running along the western side of the tank farm.

The western portion of the property (consisting of the tank farm and the truck loading facility) is located in a containment area so that any oil spilled there is kept from flowing into the river. To that end, the western ditch is equipped with a retaining wall. There are no similar precautions for the remainder of the property. Oil spilled there can flow into the eastern ditch and through it into the river.

On the night of May 7, 1978, vandals broke into the Brimingport facility. The terminal was surrounded by a six-foot chain link fence and bathed in artificial light. Nevertheless the intruders were unobserved as they gained access to the unguarded facility by unhinging the entry gate. Stationed in the parking lot, awaiting pickup by plaintiff's drivers, were two tanker trucks filled with oil. The one tanker, parked near the southwestern corner of the lot, contained 5,500 gallons of No. 315 oil; the other, stationed near the eastern edge of the parking lot, was filled with 7,000 gallons of No. 1200 pale oil.

The vandals dumped the oil from the two trucks onto the ground and drove away the empty trucks. Pursuant to industry practice, the keys had been left in the ignition. The No. 315 oil drained into the western ditch and was stopped by the retaining wall; the No. 1200 pale oil drained into the eastern ditch and flowed into the river.

The theft of the tankers was not discovered until about 11:30 p.m. when one of plaintiff's drivers arrived at the terminal for a pickup. About two hours later, the stolen tankers were found next door at the Sentell Oil Company in the process of being loaded with diesel fuel. At approximately 2 a.m. it was discovered that the 7,000 gallons of oil had been dumped into the river. Plaintiff promptly notified the United States Coast Guard and the Environmental Protection Agency. At dawn the following morning, plaintiff commenced cleanup operations.

Plaintiff now brings suit seeking to recover the $25,334.28 it spent on cleanup activities, claiming that the oil spill was caused "solely by ... an act or omission of a third party," 33 U.S.C. § 1321(i)(1)(D), here the unknown intruders.

## DISCUSSION

A party may not recover against the United States pursuant to 33 U.S.C. § 1321(i) unless it can meet the heavy burden of showing that it is entirely without fault for the spill. *United States v. Bear Marine Services,* 509 F.Supp. 710, 715 & n. 3 (E.D.La.1980). *See Travelers Indemnity Co. v. United States,* No. 469–80L, order at 3 (Ct.Cl. Mar. 30) (order granting summary judgment), *cert. denied,* —— U.S. ——, 103 S.Ct. 374, 74 L.Ed.2d 508; *Anglo Fabrics Co., Inc. v. United States,* No. 279–77, (Ct.Cl. Mar. 20, 1981) (order adopting trial judge's opinion as basis for court's judgment); *Proctor Wholesale Co. v. United States,* 215 Ct.Cl. 1049, 1050 (1978); *City of Pawtucket v. United States,* 211 Ct.Cl. 324, 326–27 (1976); *United States v. LeBeouf Bros. Towing Co.,* 621 F.2d 787, 789 (5th Cir.1980). Where, as here, the spill resulted from the acts of third parties, the plaintiff must show that its own "act or omission ... is so indirect or insubstantial as not to constitute a contributing cause of the spill." *Travelers Indemnity Co.,* order at 3, *citing Proctor Wholesale Co.,* 215 Ct.Cl. at 1050.

In this case, plaintiff has not met this heavy burden. Its employees left an unguarded tanker loaded with 7,000 gallons of oil on a portion of its property not secured against oil spills. By so doing, plaintiff took the gratuitous and unjustified risk that, through unforeseen circumstances, the oil might be released and flow into the river, as in fact it did.

Relying upon stipulations that the terminal was located in a low-crime area, was adequately lighted and was surrounded by a security fence, plaintiff argues that it is without fault because it could hardly have foreseen that vandals would enter the premises, release the oil and steal the empty tanker trucks. This argument construes plaintiff's responsibility too narrowly. Plaintiff need not have foreseen the precise circumstances under which the oil was spilled into the river. *Cf.* Restatement (Second) of Torts § 435 (1965) (forseeability of harm or manner of its occurrence). It is sufficient that plaintiff should have foreseen that an unattended truck left on the premises at night might, through a variety of circumstances (e.g., collision with another vehicle, natural disaster, equipment malfunction, vandalism), cause an oil spill. The possibility of accidental releases of large

quantities of stored oil was clearly contemplated and the western portion of the property was adequately secured against them. Plaintiff's error—which directly contributed to the oil spill—was in parking a truck filled with 7,000 gallons of oil on the eastern portion of the property not so secured, when the truck might as easily have been parked on the other side of the same lot where its spillage would have been contained.

Plaintiff also argues that a decision by the United States Coast Guard establishes that it acted with reasonable care and therefore is without fault. The decision was made after an informal civil penalty proceeding held pursuant to 33 U.S.C. § 1321(b)(6). The Coast Guard stated that "it is apparent that vandalism was the *primary* cause [of the oil spill] and [plaintiff] took adequate precautionary measures to prevent such discharges." Letter from Captain A.T. Durgin, Hearing Officer for Marine Safety Division of the U.S. Coast Guard, to Atlantic Richfield Company (May 7, 1978) (emphasis added). This is not a finding that the intruders were solely responsible for the spill or that plaintiff was without any fault in the matter. Since the Coast Guard's findings are insufficient to sustain plaintiff's claim here, it is unnecessary to determine what weight should be accorded to them.

The court therefore holds that the oil spill was not due solely to an act or omission of a third party. Plaintiff's motion for summary judgment is denied; defendant's motion for summary judgment is granted.

Costs to the prevailing party.

IT IS SO ORDERED.