GRUNDY OIL COMPANY,
INC., Plaintiff,

v.

The UNITED STATES, Defendant,

and

Deborah L. Martin,
Third–Party Defendant.

No. 388–83L.

United States Claims Court.

May 27, 1988.

Eugene K. Street, Grundy, Va., for plaintiff.

George B. Henderson II, with whom was Asst. Atty. Gen. F. Henry Habicht II, Washington, D.C., for defendant.

Gary D. Garrison, Louisville, Ky., for third-party defendant.

OPINION

SMITH, Chief Judge.

This case comes before the court on the parties' briefs and written and video depositions. The parties have waived oral argument. The dispute arises over an oil spill that occurred during a traffic accident between the plaintiff and the third-party defendant. For the reasons set forth below judgment is awarded to the plaintiff in the amount of $19,276.48.

*Facts*

On June 25, 1982, the plaintiff Grundy Oil Company, Inc., a Virginia Corporation, was operating an oil tanker truck, one of its onshore facilities,* in the course of its business. At approximately 12:15 a.m. the plaintiff's oil truck, driven by its employee, Arthur Hershel Goff, was proceeding southbound on U.S. Highway 23, a divided, four lane highway in Pike County, Kentucky. At approximately the same time and place, the third-party defendant, Deborah L. Martin, a resident of Kentucky, was also operating her vehicle in a southbound direction on U.S. Highway 23. An accident involving the two vehicles occurred, causing the truck to overturn and spill its contents of oil.

The oil began entering a tributary of the Levisa River, a navigable water of the United States, and cleanup operations were undertaken at a cost to the plaintiff of $19,276.48. The plaintiff is seeking to recover those cleanup costs from the United States under the Federal Water Pollution

---

* Note the statutory definitions in 33 U.S.C. §§ 1321(a)(6), (7), (10) (1982).

Control Act, 33 U.S.C. § 1321(i) (1982). The parties have stipulated that the clean-up costs were reasonably and properly incurred.

### Discussion

Plaintiff has brought this action pursuant to section 311(i) of the Federal Water Pollution Control Act (FWPCA) seeking to recover the costs it incurred in cleaning up a discharge of oil into a navigable water of the United States. *See generally*, 33 U.S.C. § 1321(i) (1982). The plaintiff argues that the discharge of oil was caused "solely" by the actions of a third party within the meaning of the above section. That section states:

> In any case where an owner or operator of a vessel or an onshore facility or an offshore facility from which oil or a hazardous substance is discharged in violation of subsection (b)(3) of this section acts to remove such oil or substance in accordance with regulations promulgated pursuant to this section, such owner or operator shall be entitled to recover the reasonable costs incurred in such removal upon establishing, in a suit which may be brought against the United States Government in the United States Claims Court, that such discharge was caused *solely* by (A) an act of God, (B) an act of war, (C) negligence on the part of the United States Government, or (D) *an act or omission of a third party* without regard to whether such act or omission was or was not negligent, or of any combination of the foregoing causes.

*Id.* (Emphasis added.)

Under the statute in this case, the only issue before the court is whether the accident which resulted in a discharge of oil was caused "solely by an act or omission of a third party." 33 U.S.C. § 1321(i)(1)(D).

■ For plaintiff to prevail on its claim it must overcome a heavy burden. This court has stated that a claimant "must make both an affirmative and a negative showing." *Cities Serv. Pipe Line Co. v. United States*, 4 Cl.Ct. 207, 209 (1983), *aff'd*, 742 F.2d 626 (Fed.Cir.1984); *accord*

*Atlantic Richfield Co. v. United States*, 1 Cl.Ct. 261, 263 (1982). Applying this to the case at bar, Grundy must show that first the spill was caused entirely by the "act or omission" of the third party, Deborah Martin. Thus any error on the part of the truck driver that contributed to the cause of the accident would preclude recovery. "Second, even where causation is so limited [to a third party], plaintiff must establish, that it could not have prevented the spill through the exercise of due care." *Cities Serv. Pipeline Co. v. United States*, 4 Cl.Ct. at 209. (*Citing Travelers Indemnity Co. v. United States*, 230 Ct.Cl. 867, *cert. denied*, 459 U.S. 1015, 103 S.Ct. 374, 74 L.Ed.2d 508 (1982)).

The determination of whether the third party was the sole cause of the spill is governed by the statutes' causation language. To make such a finding, it is essential for the court to examine in detail the facts of the accident.

The scene of the collision and oil spill in this case was U.S. Highway 23, north of Pikeville, Kentucky. This particular stretch of U.S. 23 is a four lane, divided highway that passes through a mountainous coal mining area. The testimony of the various witnesses places the accident within a 500 foot area. At the northern end of the accident scene is a church and at the southern end, a school. Both of these buildings are on the west side of the highway. Across from each of these structures lies a crossover in which traffic may change directions or turn off the highway.

The plaintiff's truck driver, Hershel Goff, describes the point of impact as being north of the school, approximately 500 feet from that landmark. Deborah Martin's deposition places the point of impact almost directly across from the school.

Hershel Goff testified that while he was driving south in the right lane at about 50 mph, Martin passed him and then pulled off the road onto the right shoulder, slowed down, then turned left and back onto the road, and attempted to make what looked like a U-turn across both southbound lanes, where such a turn was not permitted. Hershel Goff claimed that he applied the

brakes and attempted to evade the Martin vehicle by moving into the far left lane, but was unable to do so because the Martin vehicle continued to angle into the far left lane. Hershel Goff testified that his truck's right fender hit the Martin vehicle on her left front fender in the outer proximity of the left lane of the highway. His truck then crossed the median, jackknifed, turned over and slid, and came to a stop spilling its contents.

Deborah Martin, on the other hand, testified that she passed a truck and then proceeded south at the lawful rate of speed for four or five miles down the highway in the right lane. She then claimed to have signaled for a left turn, moved into the left lane and then turned into the turning lane for the crossover across from the school. This was apparently done so that she and her passenger could return to Marlow's Country Palace, an establishment located about 1.5 miles north, which they had just left after socializing and drinking beer earlier that evening. Deborah Martin testified that as she was attempting to make her U-turn in the crossover lane plaintiff's truck hit her car on the left front side.

The court is faced with two very different accounts of the accident. Each plausible at first blush. The court, however, feels that Hershel Goff's testimony is clearly the correct version of what happened because it is supported by the physical evidence introduced, the testimony of James Childress, General Manager of Grundy Oil, and the testimony of the accident investigator, Kentucky State Police Trooper Joel Newsome.

James Childress arrived at the accident scene approximately two hours after it occurred. His testimony shows that the accident did not take place in the southern crossover, as Deborah Martin testified, but rather his testimony shows that the accident took place at the location that Hershel Goff asserts. Furthermore, measurements were taken at a later date that accurately depict the location of the accident. These measurements show the location of the skid marks from Hershel Goff's truck, the probable impact point of the vehicles, the resulting scuff marks that were made when Hershel Goff's truck turned over, and the final stopping location of the two vehicles after the collision. These measurements are supported by photographs of the scene taken the morning after the collision. All this evidence clearly supports Hershel Goff's testimony.

Trooper Newsome also placed the accident north of where Martin testified it occurred. His testimony clearly showed that the accident did not occur in the southern crossover, as Martin testified, but rather it occurred at approximately the same location that Hershel Goff stated it occurred. At this location U-turns are not permitted and there is a raised median. The evidence that proves this point is the location of the skid marks from Hershel Goff's truck, the approximate point of impact, and the marks on the northbound lanes of U.S. 23 that were caused by the truck turning over and sliding. None of this evidence is located in the southern crossover.

The Trooper's diagram of the accident was introduced into evidence. This diagram conclusively supports Hershel Goff's testimony and illustrates the probable direction of the vehicles and their respective resting places. This is further corroborated by the actual impact points on the vehicles. The skid marks show that the truck angled toward the median, as Hershel Goff described. The impact points on the vehicles, the truck's smashed right front fender and the car's crushed left front side, show to the court that the Martin vehicle had to be almost perpendicular to the road, as if it was trying to complete a U-turn.

The defendants try to make light of the Trooper's testimony by arguing that he based his testimony primarily on the facts given to him by Hershel Goff and not Deborah Martin. Trooper Newsome, however, merely stated that he did not remember when he got Martin's account of the accident. Deborah Martin herself states that she gave her account of the accident to Trooper Newsome immediately following the accident. The court feels that the Trooper apparently disregarded Deborah

Martin's account when faced with the actual physical facts and therefore did not include them on his report.

The court has also found inconsistent statements in Martin's deposition. First of all, Deborah Martin stated she traveled four or five miles after passing the truck. In actuality Marlow's Country Palace, the location she testified she left from immediately prior to the accident, is only 1.5 miles from the accident scene. In addition, none of the physical evidence supports her depiction of the accident. Moreover, the supporting testimony of her father, Gillis Conn, is also inconsistent.

Gillis Conn's testimony seems to be based primarily on his daughter's account of the accident, though he does testify that he drove past the accident scene the morning after. It is interesting to note that although he agrees with his daughter's depiction of the accident he admits that one of plaintiff's photographs shows the skid marks and the probable point of impact of the accident. That particular photograph shows conclusively that the accident occurred at the location that Hershel Goff, Trooper Newsome, and James Childress testified to.

Deborah Martin's passenger in the car, Franklin Howell, also testified. His testimony is inconsistent, at best. His memory of the scene is not accurate, and he placed the point of impact where there is a raised median, yet he asserted that it occurred in the southern intersection where the median is not raised. The court does not find Howell's testimony credible.

Even though the court agrees with the plaintiff's version of the accident, the court must examine the evidence and testimony again to determine if there was any error on the part of plaintiff's truck driver that contributed to the cause of the accident. There were only three eyewitnesses to the accident and two of their versions are not credible. Thus, the court is left with Hershel Goff's testimony and the physical evidence that portrays the direction of the vehicles and the point of the accident. This evidence is sufficient. *See generally Union Petroleum Corp. v. United States*, 228 Ct.Cl. 54, 75, 651 F.2d 734, 736 (1981) (per curiam) (showing reasonable standard of care as defined by 33 U.S.C. § 1321(i)(1)(D)).

■ The evidence shows that Deborah Martin pulled out in front of Hershel Goff. Hershel Goff then applied his brakes and moved into the far left lane to avoid Deborah Martin's vehicle. Trooper Newsome testified that the truck left seventy-five to 100 feet of skid marks. The actual impact points on the vehicles show to the court that Deborah Martin was almost perpendicular to the highway right before and during impact. Deborah Martin's vehicle while trying to make this U-turn had to have been blocking both lanes. This would leave Hershel Goff with no choice but to brake hard and try evasive action. When Deborah Martin pulled out in front of Hershel Goff, she was moving at a slow rate of speed. Hershel Goff moved into the left lane to allow Deborah Martin back onto the highway and to avoid hitting her. It was at this juncture that Hershel Goff must have realized that Deborah Martin was trying to make a U-turn. He applied the brakes and tried unsuccessfully to avoid the nearly perpendicular vehicle. The court finds his evasive actions reasonable under the above circumstances and under all other evidence. There is no evidence showing that Hershel Goff could have avoided the accident by continuing in the right lane, or, in fact, taking any other action.

Furthermore, there is no evidence to show that once the accident occurred and the truck turned over that there was anything the plaintiff could do to prevent or contain the spill. The general manager of Grundy Oil was at the scene two hours after it occurred. During the interim, the local fire department had applied foam to prevent fire and by the morning sawdust had been applied to soak up the resulting spill. The truck driver had been injured in the accident, and even if he could have taken some action, there is no evidence or even argument that any further prevention was possible.

## CONCLUSION

The court finds that plaintiff has shown that the accident and resulting oil spill was caused entirely by the actions of the third party. It is for this and the above reasons that the court awards clean up costs to the plaintiff in the amount stipulated by the parties, $19,276.48. Costs to plaintiff.